Yeates and wife *vs* Gill, &c.

APPEAL FROM THE MONTGOMERY CIRCUIT.

*Wills. Devisees.*

CHANCERY.

9m 203
88　86
9m 203
91　608

*Case* 53.

CHIEF JUSTICE MARSHALL delivered the opinion of the Court.

*January* 2.

Case stated.

In January, 1845, David Bruton made his will, which was admitted to record shortly after his death, in October, 1847. The third clause of the will is in the following words: "Third, I have heretofore advanced to my children as follows, viz: to Enoch in his lifetime and his family since his death, $150; to Kitty Robinson, $450; to Nancy Willis, $150; to James Bruton, $450; to David Bruton, $450, and to Sally Hulin, $1,000. My whole estate, including that part given to my wife, (to be divided after her death,) I give and bequeath to my said six children, Enoch's children being in his place, first however, the advances to be made equal and so much as is given to Nancy Willis and Sally Hulin to be under the restrictions hereinafter named."

At the date of the will, three children of the testator's son Enoch, were living, viz: Sarah Gill, who then had several children, Enoch Bruton junior, and Susan Bruton, since intermarried with Yeates. But before the death of the testator, Sarah Gill had died, leaving four infant children, and Enoch Bruton, Jr. had died a minor, childless and unmarried, leaving Susan the only surviving child of Enoch Bruton, named in the will. This bill was filed by the infant children of Sarah Gill, (by their next friend,) claiming an interest in the one sixth of their great grand father's estate, devised by his will to the children of their grand father, his son. The claim was resisted by Yeates and wife, on the ground that the latter was, at the testator's death, the sole survivor of the children of Enoch, devisees in the will, and was as such, entitled to the benefit of the whole devise. And the Court having decreed to the complainants one third of the sixth in question, and to Yeates and wife

the other two thirds, Yeates and wife bring the case to this Court, complaining that the whole was not decreed to them, and on the other side it is alleged by way of cross error, that the decree is erroneous in not allowing to the complainants one half of the sixth devised to Enoch Bruton's children.

Upon the construction of the will, we need only remark, that so far as the present controversy is concerned, the devise is just the same as if the testator had devised his whole estate to his five living children and the children of his deceased son Enoch, giving to the children of Enoch one equal sixth part, and is in substance a devise of one sixth part of his estate to his grand children, the children of his son Enoch.

This being a devise or bequest to children or grand children as a class, the doctrine seems to be that independently of any statutory regulation, the death of any one or more of the class before the death of the testator, would enure to the benefit of the survivors, who at the happening of his death, might come within the description, so that if but a single survivor of the class were then left, that one as alone, coming within the description, would take the whole, to the exclusion of the children or other descendants of the deceased. It being held that "children" cannot include grand children, nor "grand children" great grand children, unless there be some word or circumstance in the will to extend the signification of the word "children" or "grand children," beyond its proper sense ; or unless the will would be wholly inoperative without such extension ; it has also been held as a consequence, that where neither of these grounds exists, grand children cannot take with children under the latter term used as descriptive of the class, nor great grand children with grand children, under this latter description. But where at the testator's death, there are no persons coming with the proper sense of the word "children," used as descriptive of the class, the word has been extended by construction, to embrace grand children, and under similar circumstances, great grand children might be embraced in a devise or bequest to grand children.

*Where there is a devise or bequest to children or grand children, as a class, the death of any one or more of the class, before the death of the testator, will enure to the benefit of the survivors, who, at his death, might come within the description.   In such case, children will not include grand children, nor grand children great grand children, unless such construction would render the will wholly inoperative.*

According to these principles the complainants would be entitled to nothing under the will, because one of the children of Enoch was living at the testator's death, and they are not children but grand children. On the same principles, if any one of the testator's children living at the date of the will, had died before him, leaving children who survived him, these last not being his children but his grand children, would not take under the will, and if the share which their parent would have taken if living, be considered as falling to the survivors, these grand children would be wholly cut off from all interest in the estate; or if it should even be considered as falling into the estate of the testator as undevised, they would be entitled only to a rateable share of this part with the survivors. But this last supposition seems to be inconsistent with the rule applicable to devises or bequests to children as a class, and the consequence would be, that the death of any one of the testator's children between the date of the will and his own death, would, if the will remained unaltered, leave the children of the deceased child, without claim upon the estate, and wholly unprovided for by the will.

There can be no doubt that the rule referred to, though adopted for the purpose of effectuating the intention of the testator, and calculated to do so in particular cases, would in most instances of the kind above described, operate to defeat the testator's intention and to change what he supposed would be the operation of the will, since it is probable that few testators are aware that a will is *prima facie*, taken as speaking at the death of the testator, and therefore, that a change of circumstances may require a change of its provisions. But be this as it may, it is certain that cases of great apparent hardship might occur and have occurred under this rule, and to the probable violation of the testator's intention to provide for persons for whom, in the actual state of things at the time of his death, he ought to have provided, and probably would have provided had he been sensible of the necessity of an express provision. And it was doubtless with a view to these

YEATES & WIFE *vs* GILL, &c.

cases as well as perhaps to the case of a devise or bequest to a child specifically named, and who should die before the testator, that the following very brief statute was enacted in 1839, by the Legislature of this State.

"That hereafter legacies and devises to children and grand children, shall not lapse by the death of the legatee or devisee before the testator, provided such legatee or devisee shall have children living at the death of the testator, who would have taken as heir by descent, or as distributee of the legatee or devisee: (3 *Stat. Law*, 400.)

It is contended that the word *lapse* must be taken in its technical sense, as indicating the falling back of the legacy or devise, or its subject, into the testator's estate, and that this single word in this sense, is to govern the construction and restrict the operation of the entire statute. And it is argued that as a legacy given to children does not thus lapse by the death of one or more children before the death of the testator, if there be at that time any survivors who come within the description, therefore, the statute has no application to such a case, but applies only to the case where all the persons who, if alive, might take as children or grand children, die before the testator.

Statute of 1839, relating to lapsed legacies, is not to be restricted in its construction to cases where legacies or devises technically fall back into the estate, but to all cases where it would have fallen back or gone to others under the will.

But if this had been intended, it is probable that instead of saying the legacies shall not lapse by the death of the legatee in the singular number, the language would have been that they shall not "lapse by the death of the *legatees*," &c. The use of the singular number throughout the statute, in reference to the person for whose death it is intended to make provision, shows that the statute should be understood as if it read, "that legacies, &c., to children, &c., shall not lapse by the death of any legatee, &c., provided," &c. And the nature of the proviso which limits the cases to which the statute applies, shows that it was intended for the benefit of the children of such legatee, &c.

Although as the law formerly stood, legacies to children did not in a proper sense, lapse by the death of one of the children before that of the testator, yet so

far as related to any interest of the decedent, it did lapse, not into the estate of the testator, but into the interest of the survivors and the heirs or distributees of the decedent were deprived of it. The word merge would have been more proper than the word lapse. But it is sufficiently clear that the Legislature had in view not the death of all of the legatees, but the death of any of them, and intended to provide for such death provided the decedent shall have children, &c.; and this intention manifested by the general language and object of the statute, must control the meaning of the single word *lapse*. It is obvious too, that if the operation of the act be confined to the case of the death of all of the legatees or devisees, constituting the class of children or grand children at the date of the will, it will make little change in the law in those cases in which the devise is to the testator's own children or grand children. Since upon the death of all the legatees or devisees, the heirs or distributees of the decedents would be the heirs or distributees of the testator himself, and be thus entitled to his estate by the previous laws independently of the will.

We are of opinion that this statute was intended to promote equality in the distribution of estates and to subserve the probable intention of testators under a change of circumstances not expressly provided for only (as it might be presumed,) because express provision was not understood to be necessary; and it should be construed liberally for the effectuation of these objects. And as we think the manifest design of the act was to invest the children of a deceased legatee, who might be his heirs or distributees, with the same interest as the parent would have had if living at the testator's death, we are of opinion that such should be its construction and effect.

Under this construction of the statute the complainants are entitled to stand in the place of their mother, and to take one equal half as she would have done, of the sixth part of the testator's estate, devised to the children of his son, Enoch Bruton.

Wherefore, the decree is reversed upon the cross errors, and the cause is remanded with directions to render a decree in conformity with this opinion.

*Daniel* for appellants; *Apperson and Moore* for appellees.

---

CHANCERY.

Case 54.

September 26.

The case stated.