E. M. STONE *v.* EDWARD L. MINTER ET AL.

**Wills—Construction of—Word "Child or Children" Used in Devise.**

A will contained the following clause,. "I give and bequeath to my son Edmund S. Lampton eight acres of land x x x And if said Edmund shall die without lawful issue, it is my will and desire, and I do hereby direct, that the estate herein devised to him shall go to his sisters in equal proportion, and if either or both of them be dead, to the child or children of such dead sister, the children taking the share of the dead parent." Held, to mean that grandchildren of either of said devisees,. would not participate in the distribution of the estate of said Lampton, at his death without issue, but would descend.to the children only.

**Wills—Use of Word "Child" to Denote Meaning Thereof—Words and Phrases.**

The, use of the word "child" or "children" in a will, to be enlarged beyond its ordinary and popular signification is only permissible, either from necessity, where the will would be otherwise inoperative, or where the testator has shown by other words in the instrument that he did not use it in its ordinary and popular meaning, but in a more extended sense.

APPEAL FROM LOUISVILLE CHANCERY COURT.

December 1, 1868.

OPINION OF THE COURT BY JUDGE PETERS:

In April, 1823, the last will and testament of Mark Lampton was probated in the court of the county of Jefferson. Which will contains the following clause:

"I give and devise to my son, Edmund S. Lampton, and his heirs and assigns forever, five negroes, to wit: Daniel, James, Melinda, Smith, son of Aggy, and Paulina, daughter of Aggy, and the future increase of said females.

"Also eight acres of land, lying and being in Louisville aforesaid, on the western side of my ground in the range of twenty-acre lots, to be bounded on the west side by Campbell street aforesaid, which runs through the twenty-acre lot number two, and to extend from said street eastwardly equal distances along said South street, and the

southern boundary of said grounds to include the said eight acres of land, with all the appurtenances. The said slaves Melinda, Smith and Paulina shall be delivered to the said Edmund S. Lampton, his heirs or assigns, immediately after my death, and the said Daniel and James and said eight acres of land with the appurtenances, after all my debts shall be paid. And if the said Edmund shall die without lawful issue, it is my will and desire and I do hereby direct, that the estate herein devised to him shall go to his sisters in equal portions, and if either or both of them be then dead, to the child or children of such dead sister, the children taking the share of the dead parent."

At the death of the testator he left three children surviving him, viz: His son, Edmund S. Lampton, Mrs. Minerva L. Stone, wife of E. S. Stone, and Fanny M. Lampton, now the wife of Thomas F. Crutchfield.

Mrs. Stone survived her husband, E. S. Stone, by whom she had a son, E. M. Stone. She then married Minter, by whom she had a son, Marion F. Minter, and died, M. F. Minter married and died, leaving two infant children, Edmund Lane Minter and Mary S. Minter.

In 1865, after the death of his sister Mrs. Minerva Minter, and her son Marion F. Minter, Edmund S. Lampton died, without lawful issue, as is alleged, and this action was brought in the Louisville chancery court by Crutchfield and wife against said E. M. Stone and E. L. and M. S. Minter, and quite a number of tenants, for partition and to be put in possession of the one-half of the eight acres of land devised by the father of Mrs. Crutchfield, in the clause of the will quoted.

E. M. Stone filed his answer, making it a cross-petition against E. L. and M. S. Minter, claiming that he is entitled, under his grand-father's will, to one moiety of the eight acres of ground, to the exclusion of his said nephews and niece. They being infants, answered by guardian *ad litem.*. Controverted the claim of E. M. Stone to a moiety of said land, and asserted claim to one-fourth thereof, as the children of M. F. Minter, the deceased son of testator's daughter, Minerva.

To their answer Stone demurred, and the *chancellor* having overruled the demurrer and sustained the claim of the Minters to one-fourth of the land, Stone prosecutes this appeal.

What is the proper construction and legal effect of the devise to the son of the testator of the eight acres of land, and in the event of his death *"without lawful issue,"* then over, is the sole question presented on this record?

It is contended on the part of appellant, that the words *child, or children,* as used by the testator in this clause of his will, were used in their ordinary, popular sense, and not to denote, nor embrace, grand-children. While for the appellees, it is contended that upon the happening of the contingency provided for, the estate was to pass to the testator's daughters, and if either, or both, were dead, then to their families as a class, and therefore grand-children were to be included.

The testator died, as already observed, in 1823, and as his will must be considered as speaking at his death, the question must be decided without reference to the act of 1839, or the Revised Statutes whereby the rule on the subject has been modified.

In Churchill vs Churchill, 2 Met., 466, this court said the technical, legal import of the word *"children"* accords with its ordinary and popular signification; it does not denote grand-children; and though sometimes used with that purpose and effect, there is no warrant for thus enlarging its meaning in construing a will, unless indispensably necessary to effectuate the obvious intent of the testator.

It may be regarded as well settled that such enlarged or extended import of the word *"children"* when used as descriptive of persons to take under a will, is only permissible in two cases. First, from necessity, where the will would be otherwise inoperative, and, second, where the testator has shown by other words in the instrument, that he did not use it in its ordinary and popular meaning, but in a more extended sense. As sustaining the rule here stated, several authorities are cited, and it is said that upon the question there is no conflict in the authorities.

And in Yeates and wife vs. Gill, &c., 9 B. Mon., 203, this court said, after reciting the rule,

> "and it has also been held as a consequence, that where neither of these grounds exists, grand-children cannot take with children under the latter term used as descriptive of the class; nor great-grand-children with grand-children under the latter description."

In this case the testator devised his estate to his said six

children, whom he had previously named, saying *"Enoch's children being in his place.* At the date of the will there were three of the children of Enoch living. But before the death of the testator, a daughter of his son Enoch, who had married Gill, died, leaving four infant children; Enoch Bruton, Jr., the son of Enoch, Sr., had died a minor, childless, and unmarried, leaving, of the three children of the testator's son Enoch, only one living at his death, a daughter, who had married Yeates, and he claimed all the estate devised to the children of his wife's father, to the exclusion of the children of her deceased sister Mrs. Gill. And in the opinion, it is said that according to the principles of the rule of construction as therein stated, Mrs. Gill's children, the grand-children of testator's son Enoch would be entitled to nothing, because one of the children of Enoch was living at the death of the testator, and they were not his *children."* But under the provisions of the Statute of 1839, Mrs. Gill's children were adjudged to be entitled to the one-half of the estate devised to Enoch's children, the testator having died in *October, 1847,* after the act took effect.

In Hughes vs. Hughes, 12 B. Mon., 115, the court recognized the rule as authoritatively settled that the word *children* is not construed to embrace grand-children, unless there be something contained in the will which manifests the testator's intention by the use of the word, to include not only his children, but also his grand-children. In that case the grand-children were adjudged to be entitled to take a part of the *residuum;* because in the clause of the will under which claim the testator used the word *"heir"* first, and then children, referring to the same persons throughout, and using the word children synonymous with *heirs.*

In the case at bar the necessity does not exist, that appellees should take in order to make the will operative, because appellant can take under the precise designation given in the will. And the whole instrument will be read in vain to find a sentence, or single word, showing that the testator did not use the words child' or children, in their ordinary and popular sense.

It may be, that an adherence to this rule of construction may impose a hardship on appellees, and which, if testator could have foreseen, or had known that an express provision was necessary to prevent, would have provided for; but be that as it may, the court cannot be indifferent to the fact that departure from authoritatively settled rules, entail evils on the country, which greatly

overbalance any good that may result in the relief of an isolated hard case. Besides, the rule has now been modified by legislative enactments, and its operation will be limited necessarily to a very few cases hereafter.

Under the weight of authority, therefore, the court feels constrained to reverse the judgment of the chancellor, and remand the cause, with directions to sustain appellant's demurrer to the answer of appellee, and for further proceedings consistent herewith.

*Cardwells, Pirtle & Caruth, for appellant.*

*F. Hagan, for appellees.*