SARAH ARNOLD et al.

v.

PHILANDER M. ALDEN et al.

Opinion filed April 21, 1898—Rehearing denied June 10, 1898.

1. TRUSTS—*trustees under wills were not entitled to compensation prior to act of 1891.* Prior to the act of 1891 (Laws of 1891, p. 216,) a trustee appointed by will was not entitled to compensation for his services in the absence of any provision in the will authorizing the same.

2. SAME—*right of trustees under will to compensation under act of 1891.* The act of 1891, (Laws of 1891, p. 216,) providing for a reasonable compensation to trustees who "shall hereafter act under any power or appointment" by will, is not limited to trusts created after its passage, but applies where trustees continue to act under trusts previously created, as the relation of trustee and *cestui que trust* involves no obligation of contract which the legislature would be powerless to impair.

3. SAME—*effect where a trustee has received compensation as executor.* The fact that a trustee appointed by will has received compensation as executor or administrator does not deprive him of his right to compensation as trustee, provided the duties are separate.

4. WILLS—*meaning of word "issue" depends upon the testator's intentions.* Whether the word "issue" shall be construed as meaning lineal descendants indefinitely, or merely children, depends upon the intention of the testator, as indicated by the context in which the word occurs or by the language of the entire will.

5. SAME—*when the word "issue" will be construed as synonymous with "children."* The word "issue," as used in a will, will be construed as synonymous with "children" where, from all the language used, such appears to have been the intention of the testator.

6. SAME—*word "issue," to include grandchildren, must not be qualified.* It is only when the word "issue" is not qualified or otherwise explained in any portion of the will that it will be construed to include grandchildren as well as children.

7. SAME—*word "children" denotes immediate offspring.* The word "children," in its ordinary significance, denotes immediate offspring, and will not be construed to mean grandchildren unless a strong case of intention or necessary implication requires it.

8. SAME—*when words of survivorship relate to testator's death.* Where a will, after devising a remainder to specific persons and not to a class, provides that in case of the death of one of them leaving no issue the share of such one shall be divided equally among those surviving, the words of survivorship relate to the time of the testator's death, and not to the termination of the intermediate estate.

9. COSTS—*costs of litigation in construing ambiguous will—fee of guardian ad litem included.* Where the testator's language is sufficiently ambiguous to justify an application to equity for a construction of the will, the costs of the litigation must be borne by the estate, and the fee of a guardian *ad litem* for a minor beneficiary should be included, and not taxed against the fund from which the minor's share is to come.

APPEAL from the Circuit Court of DeKalb county; the Hon. CHARLES KELLUM, Judge, presiding.

This is a bill filed on September 5, 1894, by Philander M. Alden and George S. Robinson, trustees under the will of James S. Waterman, deceased. The bill, as originally filed and as amended, asks for a construction of the will; that the accounts of the trustees be audited and approved; that compensation be awarded them for services performed after July 1, 1891; and that they be permitted to resign their trust, and that successors in trust be appointed.

The facts as set forth in the pleadings and master's report are as follows: On November 28, 1870, James S. Waterman executed his will by the terms of which he gave to his wife, Abbey L. Waterman, one-third of all his property, and the remaining two-thirds, after some minor bequests, he disposed of by the fourth clause of his will. Said fourth clause is as follows:

"*Fourth*—I give, bequeath and devise all the rest, residue and remainder of my estate, both real and personal, to the said Philander M. Alden and George S. Robinson, of Sycamore, Illinois, the executors of this my last will and testament hereinafter nominated and appointed, in trust for the use and benefit of my said brothers and sisters, to-wit: John C. Waterman, Charles Waterman, Robert W. Waterman, Charlotte Waterman, Mary Wells and Sarah E. Waterman, to have, hold, manage and control the same for such purpose, for and during the term of twenty-one years from and after the date of my decease; and that, during the continuance of said trust es-

tate as aforesaid, to receive, collect and pay over to my said brothers and sisters above named the net income and profits thereof in equal proportions to each annually, the child or children of a deceased brother or sister to take the same portion the father or mother would have taken if living. And at the expiration of said twenty-one years after my decease, I give, bequeath and devise to my said brothers and sisters, their heirs and assigns forever, the said rest, residue and remainder of my estate, both real and personal, to be equally divided between them share and share alike, the child or children of any deceased brother or sister to take the same share the father or mother would have taken if living. And in case of the death of any of my said brothers or sisters leaving no issue, the share such brother or sister would have taken, if living, to be equally divided among my surviving brothers and sisters."

At the date of the execution of the will, all the brothers and sisters of the deceased, named in said fourth clause, were living. On July 19, 1883, James S. Waterman died, leaving him surviving all of said brothers and sisters, except Mary Wells who had died in March, 1878, leaving her surviving four children, to-wit: Elizabeth M. Chase, Helen M. Thomas, Abbey J. Kinney and John Frank Wells. On September 18, 1883, the will was duly probated, and the said Alden and Robinson qualified as executors, and entered upon their duties as such, and also entered upon their duties as trustees under said fourth clause. After the death of the testator, to-wit: on April 12, 1891, his brother Robert W. Waterman died, leaving a widow and six children. On May 9, 1891, the testator's sister Charlotte J. Waterman died unmarried and without children. On October 19, 1883, his brother John C. Waterman died leaving eight children. On June 7, 1894, his sister, Sarah E. Waterman, a widow, died, leaving her surviving three children, to-wit: two daughters, Abbey J. Harrison and Clara W. Hayden, and one son, Charles

H. Waterman, who are appellants herein, and leaving her surviving three grandchildren, to-wit: Eva J. Burley, Charles F. Arnold and Sarah Arnold, the latter a minor, children of a deceased daughter of Sarah E. Waterman, named Mary C. Arnold, who died January 1, 1891. The said Sarah E. Waterman also left surviving her two grandchildren, named Minnie Scott (Statt) and Arthur Rowley, the children of a deceased daughter of Sarah E. Waterman, named Frances A. Rowley, who died in March, 1878. A guardian *ad litem* was appointed for the minor, Sarah Arnold. The five grandchildren of Sarah E. Waterman are also appellants herein. The testator's brother, Charles Waterman, is still living, and has one son named Waldo Waterman.

All of said children and grandchildren and said surviving brother are made parties defendant to the bill and amendment thereto. Some of the defendants answered, and some demurred to the bill, and some answered a portion, and demurred to other portions of the bill.

Before the filing of the present bill, there had been an accounting in a court of chancery, settling the account of these trustees from the time of their acceptance of the trust up to August 15, 1893. Some of the facts in relation to said former bill and accounting may be seen by reference to the case of *Waterman* v. *Alden*, 144 Ill. 90.

In the case at bar, an order of reference was made to a special master to examine and state the account from August 15, 1893, between said trustees and the various *cestuis que trustent*, named in the bill, and to report what would be a reasonable compensation to be allowed said trustees, and the surviving trustee, Alden, from July 1, 1891, to July 19, 1896, for collecting and disbursing income. The master found that the sum of $2500 would be such reasonable compensation. No exception was taken to this finding. The court found, on issue joined on demurrer, that the trustees were entitled to the compensation, found by the master, by virtue of the act of 1891,

and decreed accordingly. The master found, and the court decreed in accordance with such finding, that, by the true construction of said will, the words of survivorship, contained in said fourth clause, related to the time of the death of said testator; that the children of said Mary Wells take the share, to which their mother would have been entitled had she survived the testator; that, upon the death of said Charlotte J. Waterman, leaving no child or children or descendants of any child or children, the share of income accruing after her demise, and the principal fund, which would have gone to her had she survived to take the same under the will, belonged to the brother and sister surviving Charlotte, to-wit: Charles and Sarah, and the children of deceased brothers and sisters taken as a class, and constituting, with the brother and sister, five classes, the surviving children of deceased parents taking in equal proportions the shares their respective ancestors would be entitled to if living.

The decree of the court below also ordered, that the children of Mary Wells, deceased, taken as a class, on the death of the testator, took, as vested and certain estate in equal parts, the share of said Mary Wells, to-wit: an undivided one-sixth of said trust estate, afterwards by the death of Charlotte enlarged to an undivided one-fifth; also that, on the decease of John C. Waterman, his children, taken as a class, took, as vested and certain estate in equal parts, the share of the said John C. Waterman, to-wit: an undivided one-sixth, enlarged as aforesaid to an undivided one-fifth; that, on the death of Robert W. Waterman, his children, taken as a class, took as a vested and certain estate in equal parts his portion, amounting to one-fifth as aforesaid, except the portion of the income upon one-sixth which had accrued prior to the death of said Robert.

The court also ordered and decreed that, on the death of Sarah E. Waterman, her surviving children, taken as a class, took, as vested and certain estate in equal parts,

the portion of said Sarah E. Waterman, to-wit: an undivided one-sixth enlarged to one-fifth as aforesaid, except such part of the income upon the share of said Sarah as had accrued before her death.

PLUM & CLOYES, and W. C. KELLUM, for appellants.

CARNES & DUNTON, and JOHN P. WILSON, for appellees.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

*First*—The first question in this case is, whether the court below decided correctly, that the trustees were entitled to compensation, under the provisions of the act of June 17, 1891, for services, rendered as trustees since July 1, 1891. The act of June 17, 1891, entitled "An act concerning compensation of trustees" is as follows: "that, where a trustee or trustees shall hereafter act under any power or appointment given or created by any will, testament, or codicil, and in such will, testament or codicil, except in case of trusts for charitable, religious or educational purposes, shall be contained no provision respecting the compensation to be allowed or paid such trustee or trustees, a reasonable compensation may be charged and allowed, demanded and collected therefor."

In the case at bar, the trustees had acted as executors and trustees under the will for nearly eight years before the act of 1891 went into effect. The will contained no provision allowing them any compensation, and they received no compensation for their services as trustees prior to July 1, 1891. When they accepted the trust under the will, and entered upon their duties as such, there was no law in this State, which entitled them to compensation for their services. The rule, laid down in the text books and established by the courts of equity in England, is that a trustee is not entitled to compensation for his

services.  Prior to the passage of the act of 1891, we de-cided in several cases that the English rule is formally established in the jurisprudence of this State.  (*Bucking-ham* v. *Morrison*, 136 Ill. 437; *Cook* v. *Gilmore*, 133 id. 139).

Counsel for appellants contend that, inasmuch as the trustees here began their services under the will, as trustees for the estate, under the old rule which allowed them no compensation, they cannot receive compensation for services rendered since the passage of the act of 1891. In support of this contention, the well known rule is invoked that the legislature has no power to pass an act, impairing the obligation of contracts.  It is said that, by assuming the trust when no compensation was allowed, they thereby agreed to complete the trust without compensation.  The validity of this contention depends upon the further question, whether the original assumption of the duties of trustees under the will, without the right to receive any compensation under existing law, involved in it any element of contract.

The reason, given in the authorities for not allowing compensation to trustees at common law, was based upon grounds of public policy.  The rule was based upon the principle, that the trustee should execute the trust for the benefit of the beneficiary alone, and should derive no profit by reason of the trust.  The authorities do not intimate that the relation of trustee and *cestui que trust*, or the relation between the creator of the trust and the trustee, is one of contract.  The act refers to trustees, who "shall hereafter act" under any power created by will.  There is no statement that the trustees are those, who shall thereafter act under wills to be thereafter executed, or whose appointment, or entry upon the discharge of their duties, shall take place after the passage of the act of 1891.  The language refers to future action by trustees, whether under existing wills, or under wills to be executed in the future.

It has been held, that the recovery of costs is controlled by statutes in force at the time the right to costs accrues, and that it is competent for the legislature, at any time during the progress of a suit, to create an allowance for services not before provided for, and to increase or diminish or wholly abolish such allowance as existed at the beginning of the suit. (*Supervisors* v. *Briggs*, 3 Denio, 173).

"A person who accepts an office to which no compensation is attached is presumed to undertake to serve gratuitously, and he cannot recover anything upon the ground of any implied contract to pay what the service is worth." (Mechem on Public Office and Officers, sec. 856). In the absence of a constitutional provision, and when an office is created by statute, there is no contract for the permanence of the compensation. Such an office is wholly within the control of the legislature creating it, and the compensation of the official holding it may be altered or diminished or terminated altogether during his term of office. (Ibid. sec. 857; *People* v. *Lippincott*, 67 Ill. 333; *Hoboken* v. *Gear*, 27 N. J. L. 265).

The question of the compensation of a trustee under a will, under such facts as exist in the present case, would seem to come within the doctrine thus announced in relation to costs in litigation, and in relation to the compensation of public officers. In New York it has been held, that the commissions of testamentary trustees are governed by the law in force at the time of the settlement of their accounts. In that State, where an accounting went back to 1883 and an act of the legislature was passed in 1892, changing the rate of compensation of testamentary trustees, it was held that such trustees were entitled to full commissions under the act of 1892, not only as to income received and disbursed after the passage of the act, but also as to income received and disbursed prior to the passage of the act. (*Naylor* v. *Gale*, 73 Hun, 53; *Savage* v. *Shirman*, 24 id. 307; *Same* v. *Same*, 87 N. Y. 283; *Dakin* v.

*Demming,* 6 Paige, 95). We do not hold, nor is it neces-
sary to hold, that the trustees here are entitled to com-
pensation for any services rendered before the passage of
the act of 1891, because no compensation for such services
is demanded. In Alabama, where an act had been passed
on February 18, 1867, to increase the compensation of ex-
ecutors, an accounting was had after the passage of that
act for services beginning in 1861, and it was held that
the executors were entitled to the rate of compensation,
provided by the act of 1867, for services rendered after
the passage of the act. (*Key* v. *Jones,* 52 Ala. 238; *Gould* v.
*Hayes,* 19 id. 438). The fact that the trustee has received
compensation as executor or administrator does not nec-
essarily deprive him of his right to compensation for
services rendered as trustee provided the duties are sep-
arate. (27 Am. & Eng. Ency. of Law, p. 191).

We are of the opinion that the court below committed
no error in allowing to appellees herein compensation for
their services as trustees after July 1, 1891.

*Second*—The next question, which arises in this case,
grows out of the controversy between the appellants,
Abbey J. Harrison, Clara W. Hayden and Charles H.
Waterman, who are the children of Sarah E. Waterman,
deceased, on the one hand, and the appellants, Sarah
Arnold, Charles F. Arnold, Eva J. Burley, Minnie Scott
and Arthur Rowley, who are the grandchildren of said
Sarah E. Waterman, on the other hand. When Sarah E.
Waterman, sister of the testator, died on June 7, 1894, she
left the three children and the five grandchildren above
named, the latter being the children of daughters of Sarah
E. Waterman, who died before Sarah E. Waterman died.
It is claimed by said children, that they are entitled to
take the whole of the share, which their mother, Sarah
E. Waterman, would have taken if she had lived, to the
exclusion of said grandchildren. It is claimed by said
grandchildren, that they are entitled to take *per stirpes*
the shares that their respective mothers, Mary C. Arnold

and Frances A. Rowley, would have taken, if they had been alive when their grandmother, Sarah E. Waterman, died.   In other words, the contention on the part of the grandchildren is, that the one-fifth share which would have gone to Sarah E. Waterman, if living, should be divided into five equal parts, three of which should go to her children now living, and the other two of which should be divided *per stirpes* between the issue of her two deceased daughters, Mary C. Arnold and Frances A. Rowley.   The solution of this question depends upon the further question, whether the language of the fourth clause of the will was intended to include the grandchildren of a deceased brother or sister of the testator, or whether such language should be limited to the child or children of any such deceased brother or sister.   The court below held, that the children alone of Sarah E. Waterman were entitled to take the whole of her share.

The fourth clause of the will nowhere provides, that the grandchildren of the testator's deceased brothers or sisters are to take any portion of the estate.   If such grandchildren have the right to take, it must be because the words "child or children" are so construed as to include the enlarged meaning of grandchild or grandchildren.   It is said that the word "issue," as used in the last sentence of the fourth clause of the will, includes in its meaning grandchildren as well as children, and that, as the expressions, "child or children" and "issue" are used interchangeably and with the same signification, the meaning of the words "child or children" will be enlarged so as to correspond with the meaning of the word "issue." Under the authorities, however, and the rules of construction therein laid down, the word "issue," as it occurs in the fourth clause, will be limited in its signification to correspond with the words "child or children."

It is true, that the word "issue," as a general thing, means lineal descendants indefinitely.   But whether it means descendants generally, or merely children, will

depend upon the intention of the testator, as indicated
by the context in which it occurs, or by the language of
the entire will. Hence, the word "issue" is said to be an
ambiguous term. The word "issue" as used in the will
will be construed as synonymous with "children," when
such appears from all the language used to have been the
intention of the testator. When the word "issue" in one
part of a limitation is explained by the word "children"
in another, it will be inferred that the testator intended
the word "issue" to denote children. It is only where the
word "issue" is not qualified or explained, that it is con-
strued to include grandchildren as well as children. But
words and expressions are to be construed naturally and
to be taken in their ordinary, proper and common accep-
tation, unless it clearly appears in the will that they are
used in a different sense. According to the popular signifi-
cation of the word "children," it denotes the immediate
offspring, and will not be construed to mean grandchil-
dren, unless a strong case of intention or necessary im-
plication requires it. Again, when the word "issue" is
used in reference to the parent of that issue, as where
the issue are to take the share of the deceased parent, it
must mean his children, that is, the word "parent" con-
fines the word "issue" to the children of the taker. (11 Am.
& Eng. Ency. of Law, pp. 872, 873, 875; *Adams* v. *Law*, 17
How. 417; *Palmer* v. *Horn*, 84 N. Y. 516; *Reeves* v. *Brymer*,
4 Ves. Jr. 692; *Mowatt* v. *Carow*, 7 Paige, 328; *Baker* v. *Bayl-
don*, 31 Beav. 209; *King* v. *Savage*, 121 Mass. 303; *Taylor* v.
*Taylor*, 63 Pa. St. 484). Jarman, in his work on Wills, in
discussing the question whether the word "issue" shall
be construed as synonymous with children, or as admit-
ting descendants of every degree, says: "The latter, it
is presumed, will be its construction in the absence of a
restraining context. * * * If the testator annex to
the gift to the issue words of explanation, indicating that
he used the term 'issue' in a special and limited sense, it
is of course restricted to that sense." He then cites cases

where issue is explained to mean children. (2 Jarman on Wills,—Bigelow's 5th ed.—p. 440). Chancellor Kent says: "A power to appoint to children will not authorize an appointment to grandchildren. This is a settled rule." And, in a note to the text which contains the last quotation, it is said: "A gift to children does not include grandchildren." (4 Kent's Com.—14th ed.—*p. 345).

Applying the definitions, laid down in the authorities thus referred to, to the fourth clause of the will, we can come to no other conclusion than that the word "issue" means "child or children," and that the court below correctly interpreted the will in this particular. Clause 4 provides, that the trustees shall pay over to the brothers and sisters of the testator "the net income and profits thereof in equal proportions to each annually, the child or children of a deceased brother or sister to take the same portion the father or mother would have taken if living." The fourth clause further provides that the rest, residue and remainder of the estate, both real and personal, shall be equally divided among the brothers and sisters, share and share alike, "the child or children of any deceased brother or sister to take the same share the father or mother would have taken if living." It will thus be observed, that the fourth clause makes use twice of the words "child or children," and that it uses the words "child or children" in reference to and in connection with the father or mother of such child or children. If the word "parent" confines the word "issue" to the children of the taker, there is no reason why the words, "the father or mother," should not also confine the word "issue" to the children of the taker. Immediately after the language in the fourth clause, where the words "child or children" occur as above quoted, follows this clause: "And in case of the death of any of my said brothers and sisters, leaving no issue, the share such brother or sister would have taken if living to be equally divided among my surviving brothers and sisters." Manifestly, the mean-

ing of the word "issue," as thus used in the last sentence
quoted, must be determined by the context, and by the
language immediately preceding.   The signification of
"issue," as here used, must be limited to child or children,
because the context restrains it to such meaning.  Noth-
ing in the context tends to show that the word "children"
was used in such an enlarged sense as to include grand-
children.   On the contrary, the language tends to show
that the word "issue" is here used in the restrictive sense
of children.   The intention of the testator, which must
govern in all cases of construction of wills, was evidently
to limit the shares of his deceased brothers and sisters
to their children, and hence his intention must have been,
that the word "issue" should have the restricted meaning
of children, and not such an enlarged meaning as to in-
clude grandchildren.

   *Third*—The trustees, who are appellees herein, assign
as a cross-error, that the court below decreed, that the
words of survivorship, contained in the fourth clause of
the will, related to the time of the death of the testator.
The natural interpretation of the language of this will
would appear to be, that the survivorship should be re-
ferred to the date of the expiration of the intervening
estate, or of the period of twenty-one years.   But re-
peated decisions both in England and this country refer
the survivorship, not to the termination of the interme-
diate estate, but to the testator's death, unless a contrary
intention is manifest from the rest of the will.  Words of
survivorship in a context, similar to that in the present
will, have acquired a technical meaning, differing from
the sense in which they are otherwise to be taken, re-
ferring the survivorship to the testator's own death.   In
*Moore* v. *Lyons*, 25 Wend. 119, it was said: "The weight of
authority both here and in England therefore unques-
tionably is in favor of applying the term of survivorship
upon the devise of a remainder to the death of the testa-
tor, instead of the time of the termination of a particular

estate, where it is necessary to give effect to the probable intention of the testator in providing for the issue of the objects of his bounty upon the death of their parents before the time appointed for the remainder to vest in possession; especially where the devise is to the individuals by name, and not to them as a class." Redfield, in his work on Wills, (vol. 2, 3d ed. sec. 15), says: "Where the gift is to specific persons, and not to a class, and it is provided, upon the death of one of them without issue, the share of such deceased person or persons shall go to the survivor or survivors, it becomes very apparent that by survivor the testator must have intended to include the issue of such as predeceased those who died without issue. If this were not so, and those who died without issue died last, there would be no mode of giving effect to the gift over." In *Bronson* v. *Hill*, 31 Md. 181, it is said: "In this country, however, the weight of authority seems to be in favor of the earlier rule, which refers the words of survivorship to the death of the testator, and this too without recognizing any distinction between the real and personal estate." (See also *Austin* v. *Bristol*, 40 Conn. 120). In view of the authorities thus referred to, it would seem to follow that the decree of the court below in this respect was correct.

*Fourth*—As to the costs, the rule is that, when there is sufficient ambiguity about the language of the testator to justify an application to the court of equity for a construction of the will, the costs of litigation shall be borne by the estate. (*Ingraham* v. *Ingraham*, 169 Ill. 432). All the costs in this case, except the fee of the guardian *ad litem* of the minor, Sarah Arnold, were charged to the trust fund. By the terms of the decree below this fee was charged against the fund belonging to the children of Sarah E. Waterman. It should have been charged to the whole fund of the estate, instead of that particular portion of the fund payable to said children. In this respect, the decree of the court below is hereby modified, and all

the costs, including the fee of said guardian *ad litem,* are directed to be paid out of the trust fund of the estate.

With the modification above stated, the decree of the court below is affirmed.                    *Decree affirmed.*