CORINNE RUDOLPH

*v.*

ELIZA RUDOLPH *et al.*

*Opinion filed February 17, 1904.*

1. WILLS—*will presumed to have been made in view of existing statutes.* It will be presumed, in the absence of anything in the will to show the contrary, that the will was made in view of statutes then existing, and that the same were intended by the intestate to prevail in case of a contingency not provided for in the will.

2. SAME—*effect of section 11 of Statute of Descent on devise to children as a class.* Under section 11 of the Statute of Descent, for the prevention of lapses, where the devise is to the testator's children, equally, if one of the children dies before the testator, leaving issue, who survive the testator, and no provision is made for such contingency, such issue will take the deceased child's share, notwithstanding the devise was to the children as a class, and not by name, although they were all in being when the will was made.

APPEAL from the Circuit Court of St. Clair county; the Hon. WILLIAM HARTZELL, Judge, presiding...

This is a bill for partition, accounting, etc., filed on August 28, 1902, (and afterwards amended on June 8, 1903, for the purpose of making Fannie Rudolph a party) by Eliza Rudolph (in her own behalf and as conservatrix of the estate of Frederick W. Rudolph, deceased), and Minnie A. Rudolph, and Edgar Rudolph, against Herman Rudolph, Aurelia Rudolph, Corinne Rudolph and Fannie Thornbury Rudolph.

It appears from the pleadings, proofs, and findings of the master and chancellor below, that Frederick W. Rudolph died testate in the month of July, 1902, leaving a will, dated March 15, 1875; that, at the time of his death, Frederick William Rudolph was, and for some years prior thereto had been, insane; that Eliza A. Rudolph on January 31, 1889, had been appointed by the county court of St. Clair county conservatrix of his estate, and continued to act as such conservatrix until his death; that Frederick William Rudolph left surviving him his widow,

said Eliza A. Rudolph, and three children, to-wit, Min-
nie A. Rudolph, Edgar W. Rudolph and Herman Rudolph,
and two grandchildren, to-wit, Aurelia Rudolph and Cor-
inne Rudolph, children of Henry Rudolph, a deceased
child of the said Frederick William Rudolph; that the
said Henry Rudolph died July 7, 1900, before the death
of his father, Frederick William Rudolph; that Henry
Rudolph left surviving him a widow, named Fannie
Thornbury Rudolph, and two children, to-wit, Aurelia
Rudolph and Corinne Rudolph; that the said Aurelia was
the child of Henry Rudolph's marriage with one Annie
Schubert, from whom he was divorced; that Corinne Ru-
dolph was the issue of Henry Rudolph's second marriage
with Fannie Thornbury Rudolph, his widow, who is still
living; that Herman Rudolph is insane, and confined in
an asylum at Anna; that Frederick William Rudolph
died seized in fee simple of three certain lots in Belle-
ville, one of which, to-wit, the west half of lot 8, survey
378, is occupied, and has been occupied from a date prior
to the insanity of Frederick W. Rudolph, as the home-
stead of the widow, Eliza A. Rudolph.

Aurelia Rudolph, Corinne Rudolph and Fannie Ru-
dolph answered the bill, admitting the death of Fred-
erick William Rudolph and the statement of heirship as
alleged in the bill, but denied the allegations of the bill
as to the extent of the interests of the parties. Guardians
*ad litem* were appointed for the minor, Corinne Rudolph
and for the insane person, Herman Rudolph. A copy of
the will of Frederick William Rudolph was attached
as an exhibit to the bill. The second, third and fourth
clauses of the will are as follows:

"*Second*—I hereby give and devise to my beloved wife,
Eliza A. Rudolph, in consideration of the love and affec-
tion, which she has always shown to me, and of the con-
fidence which I repose in her, all of my real and personal
estate and property, money, goods, chattels, demands
and claims, which I may leave at the time of my death,

for her lifetime; in order that my said wife, the said Eliza A. Rudolph may, during her natural life, enjoy the benefits, and draw the interest and rents of said real and personal property.

"*Third*—It is my will that my wife, said Eliza A. Rudolph, shall have power and be authorized after my death to sell any or all of said real and personal property at public or at private sale, if she should consider it to her interest to do so, and then enjoy the rents and interest of the proceeds of such sale during her lifetime.'

"*Fourth*—After the death of my said wife, Eliza A. Rudolph, I give and devise all my real and personal estate and property, money, goods, chattels, demands and claims to my beloved children, as their absolute property in fee simple, to be equally divided between them."

The cause was referred to a master in chancery, who reported the facts and his conclusions. The master found in his report that, under clause 4 of the will, as above quoted, and by the bill and answer, it was put in issue whether or not the distribution of the estate should be confined to the three surviving children of said Frederick W. Rudolph, or whether the children of said Henry Rudolph, deceased, should participate in such distribution, and take the portion which their father would have taken, were he alive at the time such distribution was made; that the word, "children," as used in this will, is intended to designate a class of persons or devisees, to-wit: the immediate offspring of the testator, and that it should not be construed to include grandchildren, inasmuch as there is nothing appearing in the context of the will to show, that such a construction would be consistent with the intention of the testator; that the distribution of the estate should be confined to those of this class, who were *in esse* at the time the devise took effect, to-wit, the death of the testator; that Aurelia and Corinne Rudolph, children of Henry Rudolph, deceased, do not belong to the class designated by the testator as and

for his devisees; that the premises are subject to partition in the following proportion: Herman, Edgar and Minnie Rudolph, children of the testator, are each entitled to an undivided one-third, subject to the life estate of said Eliza A. Rudolph in all of said premises, and her homestead in said west half of lot 8; that Henry Rudolph, not having been seized of any portion of said premises during his intermarriage with either Annie Schubert or Fannie Thornbury, neither of the latter persons is entitled to dower in any part of the premises. Exceptions were filed to the report of the master, which were overruled by the court, and a decree was entered in accordance with the findings of the master. The present appeal is prosecuted by Corinne Rudolph, who excepted to that part of the master's report, which found that the children of Henry Rudolph took nothing under the will.

The present appeal is prosecuted from the decree of the court, overruling the exceptions to the master's report as above stated.

WILLIAM P. LAUNTZ, and WILLIAM U. HALBERT, for appellant.

R. W. ROPIEQUET, for appellees.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The question, presented by the record, is whether or not the circuit court decided correctly in holding that Herman, Edgar and Minnie Rudolph, the children of the testator, Frederick William Rudolph, who were living at the time of his death, were each entitled to one-third of the premises sought to be divided, subject to the life estate of the widow, Eliza A. Rudolph, and in holding that Aurelia Rudolph and Corinne Rudolph took nothing under said will. In other words, the contention of the appellant is that Herman, Edgar and Minnie Rudolph inherited each an undivided one-fourth of the premises,

subject to the life estate of the widow, Eliza A. Rudolph, and that Aurelia Rudolph and Corinne Rudolph, the children of the deceased son, Henry Rudolph, inherited the other one-fourth thereof, each being entitled to an undivided interest of one-eighth. The decision of the question involved requires a construction of the will, and of section 11 of chapter 39 of the Revised Statutes, being "An act in regard to the descent of property."

By clause 4 of the will of Frederick William Rudolph, it is provided as follows: "After the death of my said wife, Eliza A. Rudolph, I give and devise all my real and personal estate and property, money, goods, chattels, demands and claims, to my beloved children, as their absolute property in fee simple, to be equally divided between them." When the will was made in 1875, the testator, Frederick William Rudolph, had four children, to-wit, Herman Rudolph, Edgar W. Rudolph, Minnie A. Rudolph and Henry Rudolph. But Henry Rudolph died in 1900, two years before his father, Frederick William Rudolph died, so that, at the time of the death of the latter, there were only three children, instead of four, to-wit, Minnie, Edgar and Herman. The question is, did the children of Henry Rudolph, who died before his father, to-wit, Aurelia Rudolph and Corinne Rudolph, take under the will the same interest, which their father, Henry Rudolph, would have taken, if he had lived until after the death of his father, the testator, Frederick William Rudolph.

On the part of the appellees it is claimed that, by section 4 of the will, the devise was to a class, to-wit, the children of the testator, without a statement of the names of the children. The general rule is that, where the devise is to a class, the remainder vests in the survivors of that class who are alive at the death of the testator, as the estate vests and the class is determined at that time. A will takes effect at the death of the testator. (*Scofield* v. *Olcott*, 120 Ill. 362).

"It is believed to be universally true that, where there is a simple devise to a class, and the will does not, expressly or by necessary implication, fix the time when the objects of the gift are to be ascertained or when distribution is to be made, the law itself will fix it at the testator's death, that being the time when the will first speaks. * * * Strictly speaking, in contemplation of law, the class, to whom a gift or devise is limited, consists, in all cases, exclusively of such persons, coming within the description of the class, as are *in esse* at the time the gift or devise, by its own limitation, takes effect in interest, and such as are born before distribution, where distribution is deferred to a subsequent period. Those, that die before the gift takes effect in interest, are not regarded as having ever belonged to the class. * * * Where the gift or devise is to a class, none will be permitted to take, except such as are *in esse* at the time of distribution." (*McCartney* v. *Osburn*, 118 Ill. 403). Under the common law as interpreted by this court, the whole estate in such case inures to the survivors of the class. (*Lancaster* v. *Lancaster*, 187 Ill. 540).

These principles are said to be applicable to the facts of the present case, and it is said that, the devise being to a class, to-wit, the children of Frederick William Rudolph, those, who belonged to that class at the time of his death, took the property as the survivors of the class; that, although there were four children in existence at the time the will was made in 1875, to-wit, Henry, Herman, Minnie and Edgar, yet, when the testator died in 1902, there were only three children living, Henry having died before the death of his father, to-wit, in 1900; and that the class, which at the time of the making of the will, consisted of four children, consisted, at the time of the death, only of three children. It is then argued that, inasmuch as the class is the devisee which takes, and not the individuals of the class, the three children, who were survivors at the death of the testator, took

the property to the exclusion of the children of the son, who died before his father died.

There is no doubt that the position thus taken by the appellees is correct, unless section 11 of the Statute of Descent modifies.it. Section 11 of the Statute of Descent is as follows: "Whenever a devisee or legatee in any last will and testament, being a child or grandchild of the testator, shall die before such testator, and no provision shall be made for such contingency, the issue, if any there be, of such devisee or legatee, shall take the estate devised or bequeathed as the devisee or legatee would have done had he survived the testator, and if there be no such issue at the time of the death of such testator, the estate disposed of by such devise or legacy shall be considered and treated in all respects as intestate estate." (2 Starr & Curt. Ann. Stat.—2d ed.—p. 1433).

The language of the statute is, "whenever a devisee or legatee  * * * being a child or grandchild of the testator shall die before such testator," etc. It is said that the section contemplates a case where the legatee or devisee, who dies before the testator, is an individual, and as such is mentioned by name.

In some of the States courts have held that statutes for the prevention of lapses, such as section 11 of our statute in regard to descents, do not affect the pre-existing rule upon the subject of gifts to classes; that is, that the whole estate inures to the survivors of the class, and that the will creates a vested remainder in those of the children, who are alive at the death of the testator, the class being determined at that time. This is the common law rule, and, in support of its continuance notwithstanding the statute for the prevention of the lapse, the doctrine is invoked that statutes are to be construed in accordance with the principles of the common law, and that the legislature will not be presumed to have intended to make any innovation upon the common law further than the case absolutely requires; (*Smith* v. *Laatsch,*

114 Ill. 271; *Mackin* v. *Haven*, 187 id. 480); and it is insisted that, in this class of cases, the common law rule continues to exist as to devises to classes; and that the statute must be construed to refer only to cases where the individuals of a class are mentioned by name. This construction seems to have support in the language of the section, which refers to "a devisee or legatee."

In Page on Wills, (sec. 551,) after mentioning the common law rule that, when a member of a class of beneficiaries dies before the time fixed under the will for determining the members of that class, the children and descendants of such deceased member could not take in place of their ancestor, it is said: "This rule is further modified by statutes, which have been passed in different jurisdictions, providing that, if certain named beneficiaries die before testator or before their interests vest, their descendants shall take the share, to which their ancestor would have been entitled. These statutes apply generally when the beneficiary is a descendant or blood relative of testator. In some States it has been held that these statutes do not affect the pre-existing rule upon the subject of gifts to classes. The reason, which the courts give for this rule, is that indicated by the preceding note, that is, that the statutes against lapse apply only where something is given by will to one who dies before testator, and, therefore, have no application to gifts to a class, where the gift is in legal effect only to the members of the class in existence at a designated time."

In the same section, however, the same author makes the following statement: "In most States these statutes are held to apply to gifts to classes, as well as to gifts to individuals. It makes no difference whether the bequest is such to a relative by name, or whether he is designated in the will only by his relationship." A large number of authorities are referred to in the notes, which sustain the view that these statutes apply to gifts to

classes, as well as to gifts to individuals, and the great weight of authority seems to be in favor of this construction.

In 18 Am. & Eng. Ency. of Law,—2d ed.—p. 757, it is said: "In the United States it is generally considered that statutes for the prevention of lapses apply in the case of a legacy or devise to several, as a class, though none be mentioned by name. * * * Statutes for the prevention of lapses are intended, not to defeat the will, but to supplement it, and ought not to control if it be inconsistent with the will to have them control. But it must be presumed that the testator made the will in view of the statute, and that he intended to have the statute prevail, unless the contrary appears. The burden of showing the contrary is on the party claiming that the statute does not apply, and this burden is not lifted when it is made to appear that the legacies were prompted by personal regard for the legatees, for the fact, that they were so prompted, is not at all inconsistent with an intent to have them go to the descendants of the legatees, in case the legatees themselves die before the testator. The person, claiming that the statute does not apply, must go further and make it appear that the legacies were not only prompted by personal regard, but that they were intended to be purely personal gifts, and were intended not to go to the descendants of the legatees under the statute."

In the case at bar, section 11 of the statute in regard to descents was in force when Frederick William Rudolph made his will in 1875, and it must be presumed that he made his will in view of the statute, and that he intended to have the statute prevail. Nothing to the contrary appears in the will. On the contrary, it would appear that it was the intention of the testator that his four children should take. At the time he made his will, he had four children, because at that time Henry was alive. He says: "After the death of my said wife, Eliza A. Ru-

dolph, I give and devise all my real and personal estate, etc., to my beloved children as their absolute property in fee simple to be equally divided between them." The words, "to be equally divided between them," have a significance here, as indicating that the intention was to give the property to the individuals, who constituted his children at that time. The case of *Arnold* v. *Alden*, 173 Ill. 229, is referred to by counsel for appellee, as indicating that the word "children" denotes immediate offspring and will not be construed to mean grandchildren, unless a strong case of intention or necessary implication requires it. But the case of *Arnold* v. *Alden*, *supra*, has no application here, for the question is not in regard to the sense, in which the word "children" is used in the will, but the question is as to the meaning of section 11 of the statute in regard to descents, which provides that the issue, if any there be of such devisee or legatee, shall take the estate devised whenever such devisee or legatee, being a child or grandchild, shall die before the testator and no provision shall be made for such contingency. No provision is made in the will in the case at bar for the contingency of the death of one of the legatees before the death of the testator. The four children of the testator were well known to him when he made his will, and are spoken of by him as his "beloved children." It does not appear that it was necessary to mention the four children by name, in order to indicate the persons who were to be the subjects of his bounty. Certainly, justice and equity would require that the children of the deceased child should take the same interest in the property, as the three children, living at the death of the father, would take.

In *Strong* v. *Smith*, 84 Mich. 567, the statute of Michigan there under consideration provided that, "when a devise or legacy shall be made to any child or other relative of the testator, and the devisee or legatee shall die before the testator, leaving issue who shall survive the

testator, such issue shall take the estate, so given by the will, in the same manner as the devisee or legatee would have done if he had survived the testator, unless a different disposition shall be made or directed by the will;" and it was there held that, under a will devising real estate in equal shares to the brothers and sisters of the testator, and to those of his wife, without naming them, the issue of the deceased brothers and sisters of the testator, who survived him, took the estate devised to their parents respectively, such a devise being governed by the Michigan statute above quoted. It will be observed that the Michigan statute is similar in terms to our own statute, and we see no reason why the doctrine announced in the case of *Strong* v. *Smith, supra,* should not be applied to the case at bar.

In *Strong* v. *Smith, supra,* the case of *Moses* v. *Allen,* 81 Me. 269, is referred to and commented upon, where it was held that it could make no difference, in the application of the rule, whether relatives were referred to by name, or described by their relationship to the testator.

In *Woolley* v. *Paxson,* 46 Ohio St. 307, in commenting upon the statute for the prevention of lapses, the court said: "The fact, that the child or relative is not mentioned by name, should not defeat the application of the statute where the language, applied to the facts as they were at the execution of the will, designates a child or relative as an object of the testator's bounty with as much certainty as if it were mentioned by name. * * * They were all adults and their names well known to him; and the devise that he makes is to Isaac for life, and then to his children in fee simple. This, in the light of the circumstances, must be taken in a distributive sense, and is a devise to each of Isaac's children of the fee simple in remainder, as definitely as if it had been to each by name. * * * Hence, as under a devise to a class, each member who survives the testator would, independent of the statute, take an aliquot part of the devise as

a tenant in common with the other survivors, therefore, under the statute, in such case the issue of a deceased member of the class surviving the testator must take what the deceased would have taken had he survived. Any other construction would render the statute nugatory in a large class of cases to which its provisions are by its terms directly applicable."

In *Strong* v. *Smith, supra,* it was further said: "The devisees, at the time of the execution of the will, were all known to the testator. They had matured. The 'class' was liable to diminution only. The fact that the brothers and sisters of the testator were not named does not take them out of the statute. Indeed, under the authorities, the question, 'whether a gift is one to a class does not depend upon the fact that the devisees are not named individually, but upon the mode of the gift itself, namely, that it is a gift of an aggregate sum to a body of persons, uncertain in number at the time of the gift, to be ascertained at a future time, the share of each being dependent for its amount upon the ultimate number of persons.' Here, the body of persons was not uncertain in number. The gift was to a certain number in 'equal shares.'"

So, in the case at bar, the body of persons was not uncertain in number, because Frederick William Rudolph, at the time he made his will, had exactly four children, who were all well known to him at that time, and his gift is "to my beloved children as their absolute property in fee simple to be equally divided between them;" that is to say, the gift here, as in *Strong* v. *Smith, supra,* is to a certain number in equal shares. If the number of children had been uncertain at the time of the making of the will, and to be ascertained at a future time, so that the share of each would be dependent as to its amount upon the ultimate number of persons, a different case would be presented, but no such case is shown by the present record. (See also in support of

these views the following cases: *Stockbridge, Petitioner,*
145 Mass. 517; *Bradley's Estate,* 166 Pa. St. 300; *Cheney* v.
*Selman,* 71 Ga. 384; *Yeates* v. *Gill,* 9 B. Mon. 203; *Moore* v.
*Weaver,* 16 Gray, 305; *Guitar* v. *Gordon,* 17 Mo. 408; *Moore*
v. *Dimond,* 5 R. I. 121.)

In *Missionary Society* v. *Pell,* 14 R. I. 456, the statute un-
der consideration was as follows: "Whenever any child,
grandchild, or other person, having a devise or bequest
of real or personal estate, shall die before the testator,
leaving a lineal descendant, such descendant shall take
the estate, real or personal, as devisee or legatee, in the
same way and manner as such devisee or legatee would
have done in case he had survived the testator;" and it
appearing there that the legatees died before the testa-
tor leaving lineal descendants, it was held that the will
must be presumed to have been made in view of the stat-
ute, the court saying: "We think it must be presumed
that the testator made the will in view of the statute,
and that he intended to have the statute prevail unless
the contrary appears. The burden of showing the con-
trary is on the plaintiff, and we do not think the burden
is lifted when it is made to appear that the legacies were
prompted by personal regard. The fact, that legacies
are prompted by a personal regard for the legatees, is
not at all inconsistent with an intent to have them go
to the descendants of the legatees in case the legatees
themselves die before the testator. The plaintiff must
go further and make it appear that the legacies were not
only prompted by personal regard, but that they were,
as he claims, intended to be purely personal gifts, *i. e.,*
that they were intended not to go to the descendants of
the legatees under the statute." In the case at bar, it
is said that the use of the words, "my beloved children,"
indicated that the legacies were prompted by a personal
regard for those children, and, therefore, that it could
not have been the intention of Frederick William Ru-
dolph that the property should go to the issue of the

legatees. But we are of the opinion that, even if the words used in the will do indicate that the testator was prompted by personal regard for his children, that fact is not at all inconsistent with an intent to have the property go to the issue of the children, in case any of the devisees or legatees should die before the testator.

Inasmuch as the construction of said section 11, as applying to gifts to classes, as well as to gifts to individuals, conforms to the construction, given to similar statutes in a large majority of the States, and harmonizes with the great weight of authority upon the subject, we are inclined to hold such construction to be the correct one; and we are of the opinion that the children of Henry Rudolph, to-wit, Aurelia and Corinne Rudolph, are entitled to take the same interest in the estate as their father, Henry Rudolph, would have taken, if he had not died before his father died, notwithstanding the fact that Henry Rudolph was not referred to in the will by name, but only as one of the testator's children, and as belonging to the class designated as children. The adoption of this construction gives to Aurelia and Corinne Rudolph an undivided one-fourth interest in the property, or to each of them an undivided one-eighth interest in the property. As the decree of the court below gave them nothing, it is erroneous in that respect under the views above expressed. It is correct, however, in holding that neither the widow of Henry Rudolph, nor his divorced wife, is entitled to dower, as he was not seized of any portion of the premises during his marriage with either of them.

Accordingly, the decree of the circuit court of St. Clair county is reversed and the cause is remanded to that court for further proceedings in accordance with the views herein expressed.     *Reversed and remanded.*