## Luther Hornbeek, Executor, Defendant in Error, v. Henry C. Hornbeek, Executor, et al., Plaintiffs in Error.

1. WILLS—*how construed*. The construction of a will must be ascertained from a consideration of its language as a whole.

2. ADMINISTRATION OF ESTATES—*when executor should defend*. It is the duty of an executor to make every available defense to a claim presented against the estate of his testator, and this rule applies to claims predicated upon an obligation of suretyship assumed by such testator.

3. SUBROGATION—*when right to deny*. A party who makes a wrongful payment is not entitled to subrogation and such a payment is voluntary.

Bill to construe will. Error to the Circuit Court of Scott county; the Hon. OWEN P. THOMPSON, Judge, presiding. Heard in this court at the May term, 1909. Affirmed in part, reversed in part and remanded. Opinion modified, rehearing denied June 30, 1910.

J. M. RIGGS, T. J. and J. O. PRIEST, and BELLATTI, BARNES & BELLATTI, for plaintiffs in error.

J. A. WARREN, for defendant in error.

MR. JUSTICE PHILBRICK delivered the opinion of the court.

This was a bill filed by Luther Hornbeek, one of the executors of the last will and testatment of Silas Hornbeek, and the construction of the will of Silas Hornbeek as to the distribution of his estate, also for certain relief against his coexecutor, Henry C. Hornbeek. This writ of error is prosecuted to reverse the decree rendered upon hearing in the Scott Circuit Court. The will of Silas L. Hornbeek, deceased, is set forth in full in the bill, but the construction of this will is asked only as to paragraphs two, four, five and eight. Silas Hornbeek executed his will on the 27th day of August, 1890, and died April 15, 1893.

Paragraph two is as follows:

"I give and devise to my wife and my son Charles Hornbeek as tenants in common the following described premises:

The East half of the northeast quarter of Section Seven (7), the Northwest quarter of the southeast quarter of Section (7), and the southwest quarter of the northwest quarter of Section eight (8), all in Township Fourteen (14), north, and range Twelve (12), west of the 3rd P. M., Scott County, Illinois, for and during the period of their natural lives and the life of the survivor of them, the survivor enjoying the entire benefit of said premises during the period he or she survives the other; should my said son Charles at the time of his death leave a child or children or the descendants of a child or children him surviving, then it is further my will that, on the death of my wife and my son Charles that said east half of the northeast quarter of Section Seven (7), Township and Range aforesaid, shall go in fee simple to said child or children or their descendants forever; and the other tracts (being two forty-acre tracts) be sold by my executors on such terms as they deem best and after payment of the necessary and proper expenses incurred in making said sale, they will distribute the proceeds thereof among my children, share and share alike, or should any of my children die before such time of distribution and leave heirs of their body them surviving, then such heirs of their body are to take the distributive share of said proceeds their parent would have taken if then living.

"Should any of my children before said time of distribution die leaving no issue them surviving or descendants of such issue, then such proceeds to go to my children then surviving and the descendants of those who may have died leaving heirs of their body them surviving and should my son Charles die leaving no heirs of his body him surviving, then said eighty-acre tract (i e, E ½, N E ¼, Sec. 7, T 14, N R 12, W) is to be sold by my executors at the time of the sale of the two other tracts and the proceeds thereof to be distributed by my said executors in the same manner and upon the same terms and limitations as the proceeds of said other two parcels."

Paragraph four is as follows:

"At my death it is my will and I hereby so direct that the following described premises and any other I may own at my death and are not specifically disposed of by me, be sold by my executors on such terms as may to them seem best for

my estate, to-wit: . . . . . . . . and after the payment of all necessary expenses and charges of said sale, the proceeds thereof be disposed of as follows: 1st. If any deficiency exists in the payment of my debts, said executors pay such deficiency; 2nd—that they pay the special legacies hereinafter made by me in this will and then that they distribute the balance of said proceeds as follows: *i. e.*, to my children then living and the child or children of any of my children that may then be dead and left such child or children them surviving, such child or children taking between them, the share that their father or mother would have taken if then living."

By clause fifth testator devised a specific parcel of land to his son Luther (defendant in error), and to the heirs of his body, with this further provision:

"Should my said son leave no child or children or the descendants of a child or children him surviving, then said tract of land to go to his surviving brothers and sisters, or in case of the death of any of my children before that time leaving descendants, such descendants to take the portion their parents would have taken if living."

Paragraph eight is as follows:

"It is my will and hereby so direct that all the rest and residue of my estate go to and be equally divided among my children living at the time of my death; and the child or children or descendants of such child or children of any of my children who may die before my demise, leaving a child or children or the descendants of such child or children them surviving who are living at the time of my demise, said child or children to take the portion that their parent would take if living at my death."

By a codicil added on August 27, 1890, he modified some of the personal bequests in his will; he reduced a bequest to his granddaughter, Ollie May (Straight) Hazelrigg, and added the following:

"And I also further modify the provisions of the said will so that in the event my said grandchild, Ollie May Straight, should die before she should attain her majority, then she is

not to take anything under the other provisions of said will, except she shall need something for her support, maintenance and education during her minority, in which case my executors shall pay her or for her a sum sufficient to support, maintain and educate her and should she live until she is of age, then she is to take the share provided for her under the provisions of said will except said $3,000, and this I declare to be a codicil of my said last will."

The will was executed on the 27th day of August, 1890. His daughter, the mother of Ollie May (Straight) Hazelrigg, was dead at the time of the execution of this will and codicil.

The widow of Silas L. Hornbeek died prior to the filing of this bill and his son, Charles Hornbeek, mentioned in the second clause of said will, died without leaving any issue of his body.

In a devise or bequest in a will made to the children of the testator the word, children, does not ordinarily include grandchildren and unless the language, of itself, is sufficient to show an intention to include the grandchildren, they cannot take under the designation of children.

The question raised on the construction of the will is whether the grandchild, Ollie May (Straight) Hazelrigg, is entitled to share in the distribution of the funds arising from the property described in paragraphs two, four, five and eight.

These questions arise from the peculiar language used by the testator in these paragraphs, the controversy being, whether the language is such as will permit the grandchild to share in the distribution, or whether the language used refers only to such children as may die after the execution of the will, and the distribution be confined to children who are living at the time of the execution of the will, or to their descendants, or whether the language used includes all his children or their bodily heirs, whether dead at the time of the execution of the will or who might die thereafter, and leave heirs of their body surviving, and whether such grandchild will take the portion the parent would take, if living.

The construction of the language used in the direction of the distribution of the fund arising from these paragraphs, must be determined from a consideration of the entire will.

The language "should any of my children die before the time of the distribution," under a strict grammatical construction, would ordinarily mean those who might die in the future; but the language used by the testator in paragraph two of the will, in which he directs the executors to distribute the proceeds thereof (meaning the premises contained in this paragraph) among his children, share and share alike, or *should* any of his children *die* before said time of distribution leaving no issue surviving or descendants of such issue, then the proceeds to go to his children then surviving *and the descendants of those who may have died leaving heirs of their body them surviving,* shows that the testator did not intend to confine the distribution to his children alone, but that it was his intention that the grandchildren, if any there might be, should share in the distribution of this fund. His direction that children, whose parents might be dead, should take the portion that their parent would take, if living, included the grandchildren; and the express direction to the executors that if any of his children be dead at the time of distribution and die without leaving bodily heirs surviving, then the fund shall be distributed among those children surviving and to the bodily heirs of those who may be dead, is without any limitation or restriction as to the time of the death of the ancestor, and the direction to distribute the proceeds of this fund among his children, then surviving, share and share alike, and to the descendants of any child or children the share that the parent would take, if living, must be construed to include all grandchildren whose parents are dead, unless by the use of the word "should" it is to be confined to children who die after the testator, and whether testator meant this must be determined from the entire will and the language used in the various paragraphs. Neither the language of this paragraph nor of the entire will, by any apt words, expresses a desire or intention that the grandchildren, whose parents are dead, should not share in the

distribution of this fund, and to so hold will require a strict grammatical construction of the language used, and require a holding that by the use of the word "should" the testator meant only children who might die after the execution of the will.

Under paragraph four, the language which is as follows: After payment of the special legacies the executors will then "distribute the balance of the proceeds as follows: To my children then living and the child or children of any of my children that may then be dead and left such child or children them surviving, such child or children taking between them the share that their father or mother would have taken if then living," it seems to us can leave no question but what the grandchild, Ollie May (Straight) Hazelrigg, is entitled to share in the distribution of this fund. The language is plain and explicit that the proceeds of that paragraph shall be divided among the children then living and that *any that may then be dead* and left child or children surviving, the child or children to take the share the father or mother would take, places no restriction, grammatical or otherwise as to the time of the death of the parent, and it can hardly be contended that the language does not include this grandchild. Counsel practically concede she is included in this paragraph.

Upon the question of the construction of paragraph five of this will, at the present time Luther Hornbeek is still living and unless he should die without leaving any children or descendants of child or children surviving him, there would be no cause for construction of this paragraph, but should he die leaving no child or children or descendants of child or children then under the provisions of this paragraph of the will the distribution under paragraph five would fall under the same rule as laid down herein regarding paragraphs two and four.

The language of the eighth paragraph is substantially the same as two, four and five. This paragraph provides that the residue of his estate be equally divided among his children *living at the time of his death*. If the paragraph end-

ed here, and there was no other provision in it, then there could be no possible question but the distribution under this paragraph would be limited to the children surviving the testator and a grandchild could not be included therein, but by the further language of this paragraph he directs that "the child or children or descendants of *such child* or children of any of his children who may die before his demise, leaving a child or children or the descendants of such child or children them surviving, who are living at the time of my demise, said child or children to take the portion that their parent would take if then living," by the language here used, providing that distribution shall be made to the "child or children of any of my children who may die before my demise, leaving a child or children or the descendants of a child or children them surviving" places no restriction upon the time of the death of the parent, unless it be found in the grammatical construction of the use of the language "of my children who may die before my demise," and unless the strict grammatical use of this language must be held to control all of his grandchildren, whose parent died prior to the death of the testator and which grandchildren were living at the time of the death of the ancestor, must be included in this distribution. What has heretofore been said in regard to paragraph two has a like application under paragraph eight.

In the case of Arnold v. Alden, 173 Ill. 229, the court held in the construction of a will with language similar to that contained in this will that the grandchildren should be included in the distribution and upon that authority we hold that the language here used is broad enough to and does include the grandchild, Ollie May (Straight) Hazelrigg, in the distribution of the funds arising under this will.

The codicil to this will which contains this language "that in the event my said grandchild, Ollie May Straight, should die before she attain her majority, then she is not to take anything under the *other provisions of said will*," clearly indicates that the testator intended that his granddaughter should, on condition she arrive at her majority, be included

in the distribution of the funds of his estate under some of the paragraphs of his will and especially so for the reason that the codicil in which this provision is contained eliminates from the will the clause containing the special bequest therein made to her of $3,000 and by the codicil provides a bequest of $2,000, and unless the language in those paragraphs in the will be such that she cannot be included, then she must be permitted to share in the distribution thereunder.

The language of the testator is specific in the provisions that the heirs of the body of any child or children should take the portion that their parent would take, if living, shows an intention to recognize and provide that his grandchildren should share in the distribution under those paragraphs, and we cannot construe it to mean only the children of the children who survive the testator or who died between the execution of the will and testator's demise; therefore, Ollie May (Straight) Hazelrigg must be held to be entitled to share in the distribution under these paragraphs.

The decree rendered below found that Ollie May (Straight) Hazelrigg was entitled to share in the distribution of the proceeds under the will. It is correct and that part of the decree is hereby affirmed.

The other questions raised on this record arise from the fact that E. Sylvester Hornbeek on May 27, 1889, made and executed a promissory note for $674.61, due in five years, to Frost and Hubbard, payees, the note being signed by Silas Hornbeek, the testator, as surety. The last payment of interest endorsed on this note was May 27, 1894; no interest was ever paid or authorized to be paid by E. S. Hornbeek.

This note became due May 27, 1894. On May 1, 1895, it was presented as a claim against the estate of Silas Hornbeek, deceased, and on June 5, 1895, a claim of $729.47 was allowed against the estate by Luther Hornbeek as executor. This note was nearly eleven months past due when it was presented against the estate as a claim. No action had ever been commenced to collect it from the principal maker, E. S. Hornbeek. Silas Hornbeek was only a surety and it

was the duty of the executor to present every available defense to this note and prevent a judgment from being recovered against the testator's estate if possible. This, the executor Luther Hornbeek did not do, but instead allowed the claim and consented to a judgment in favor of Frost and Hubbard, the payees. His co-executor, Henry Hornbeek, took no part in this.

This judgment was paid by Luther Hornbeek as executor on April 3, 1896, to Frost and Hubbard from the funds of the estate. On March 3, 1906, the county court, upon a hearing, ordered the executors to refund to the estate of Silas Hornbeek the amount paid to Frost and Hubbard on this judgment with interest, amounting to $896. 37, finding that the principal maker was and had been solvent and that no diligence was used to collect the note from E. S. Hornbeek and that the claim was wrongfully allowed against the estate. The amount $896.37, so held to have been wrongfully paid from the funds of the estate, was refunded by Luther Hornbeek on February 5, 1906, Henry Hornbeek, his co-executor, refusing to contribute. Luther Hornbeek contends that by reason of his payment to the estate under the order of the county court he should be subrogated to the rights of the estate of Silas Hornbeek the same as though the payment had been made by the estate as surety on said note and that he is entitled to a lien against the distributive share of E. S. Hornbeek in said estate and to be paid therefrom. The chancellor so found and granted the relief sought. No action was ever brought against E. Sylvester Hornbeek on this note, and no attempt to collect from him until the filing of this bill herein October 10, 1908, wherein Luther Hornbeek in his individual capacity asks to be subrogated to the rights of the estate of Silas Hornbeek. The estate of Silas Hornbeek has not paid this note as surety. The payment has been made by Luther Hornbeek from his personal funds by reason of an order of the county court in which said court found the payment as originally made from the funds of the estate, was wrongful, and directing the executor to repay the estate.

The payment by the executor in the first instance having

been wrongful, and Luther Hornbeek having become personally liable to repay by reason of the wrongful payment, he is not entitled to subrogation.

Conceding, however, that subrogation is the proper remedy, there is nothing in this record to be subrogated to; the estate has not paid the note, and it has no judgment or claim against E. Sylvester Hornbeek. The county court having held the judgment was wrongfully allowed against the estate, the payment of the judgment by Luther Hornbeek must be held to have been a voluntary payment by him and for which he is not entitled to subrogation.

In his answer E. S. Hornbeek invokes the statute of limitations as against complainant Luther Hornbeek, the payment made by Luther Hornbeek having been more than a year after the original note was barred by the statute of limitations as against E. S. Hornbeek, and he not being a party to the judgment of Frost and Hubbard against the estate of Silas Hornbeek, nor a party to the proceedings had in the county court wherein the orders concerning this note were made, is not bound thereby. The statute of limitations was invoked as a bar, and the chancellor erred in not giving E. S. Hornbeek the benefit thereof.

That portion of the decree finding Luther Hornbeek entitled to be subrogated to the rights of the estate of Silas Hornbeek against E. S. Hornbeek and that he had a lien on the distributive share of E. S. Hornbeek in the estate of Silas Hornbeek, and is entitled to repayment therefrom, is erroneous and is reversed and the cause is remanded with directions to disallow the claim of Luther Hornbeek against E. S. Hornbeek and it is ordered that Luther Hornbeek pay one third of the costs in this court and that the two thirds be paid by the executors in due course.

*Affirmed in part; reversed in part and remanded.*