LUCILLIUS A. EMERY, Executor,

*vs.*

UNION SOCIETY OF SAVANNAH and others.

Hancock.   Opinion March 30, 1887.

*Wills.   Devises.*

When a testator devises real estate and subsequently conveys it to a person other than the devisee, the devise thereby becomes impliedly revoked.

In such case, the proceeds of the sale, in the absence of any specific provision in the will therefor, do not go to that devisee, or, next of kin, but to the residuary legatee or devisee.

ON report.

Bill in equity by the executor of the will of William F. Howland, late of Eden, Maine, to obtain a construction of the will, against the Union Society of Savannah, Ga., and Anna Marion Wirgman, John Myers Durborrow, Richard Newton Durborrow and Savannah Struthers, all of Philadelphia.

*Hale and Hamlin,* for the plaintiff.

*Holmes and Payson,* for Union Society of Savannah.

The devise was adeemed. 1 Redf. Wills, *339, *336; 1 Jarman, Wills, (5 Am. ed.) 309; 1 Williams, Executors, 241; Powell, Devises (3 Am. ed.) 376-7; 1 Toller, Executors, (3 Am. ed.) 19, 20, 22; *Carter* v. *Thomas,* 4 Maine, 341; *Hawes* v.

*Humphrey*, 9 Pick. 350; *Ward* v. *Ward*, 15 Pick. 511; *Wiggin* v. *Swett*, 6 Met. 194; *Webster* v. *Webster*, 105 Mass. 538; *Herrington* v. *Budd*, 5 Denio. 321; *Walton* v *Walton*, 7 Johns. Ch. 258; *Arthur* v. *Arthur*, 10 Barb. 9; *Skerrett* v. *Burd*, 1 Wharton, 246; *Brush* v. *Brush*, 11 Ohio, 287; *Bowen* v. *Johnson*, 6 Ind. 110 (61 Am. Dec. 110); *Epps* v. *Dean*, 28 Ga. 533; *Wells* v. *Wells*, 35 Miss. 638; *Tanner* v. *Van Bibber*, 2 Dur. (Ky.) 550; *Adams* v. *Winne*, 7 Paige, 97 : *Philson* v. *Moore*, 23 Hun. 152; *Beck* v. *McGillis*, 9 Barb. 35; *Rose* v. *Rose*, 7 Barb. 174; *Arthur* v. *Arthur*, 10 Barb. 9; *Brown* v. *Brown*, 16 Barb. 569.

The proceeds of the sale go to the residuary fund. *Farrar* v. *Winterton*, 5 Beav. 1; *Moor* v. *Raisbeck*, 12 Sim. 123; *Ex parte Hawkins*, 13 Sim. 569; *Clingan* v. *Micheltree*, 31 Pa. St. 25; 1 Jarman, Wills, 326; *Donohoo* v. *Lea*, 1 Swan. (Tenn.) 199 (55 Am. Dec. 725); *Bosley* v. *Bosley*, 14 How. 391; *Atwood* v. *Weems*, 99 U. S. 183; *Ommamy* v. *Butcher*, 1 Turn. and Russ. 260; 2 Williams, Executors, 1565; *Webster* v. *Webster*, 105 Mass. 538; *Drew* v. *Wakefield*, 54 Maine, 291; *Thayer* v. *Wellington*, 9 Allen, 283; 1 Redfield, Wills, 336; 2 Redfield, Wills, 174; *Hayden* v. *Stoughton*, 5 Pick. 537; *Adams* v. *Winne*, supra; *Arthur* v. *Arthur*, supra; *Beck* v. *McGillis*, supra; *Rose* v. *Rose*, supra; *King* v. *Strong*, 9 Paige, 94; *James* v. *James*, 4 Paige, 114; *Philson* v. *Moore*, supra; *Kennell* v. *Abbott*, 4 Ves. 802; *Birch* v. *Baker*, Mosely, 374; *Gale* v. *Gale*, 21 Beav. 349; *Frazier* v. *Frazier* 2 Leigh, 642; *Clark* v. *Packard*, 9 Gray, 417; *Prop'rs of Church* v. *Grant*, 3 Gray, 142. Intention of testator cannot overcome fixed rules of law. See *Bosley* v. *Bosley*, and two cases last cited above, also *Smith* v. *Bell*, 6 Pet. 68; *Ramsdell* v. *Ramsdell*, 21 Maine, 288; *Fisk* v. *Keene*, 35 Maine, 349; *Malcolm* v. *Malcolm*, 3 Cush. 472; *Warren* v. *Webb*, 68 Maine, 135; *Nash* v. *Simpson*, 78 Maine, 142; Powell, Devises, 376. Toller, Executors, 21; *Brown* v. *Brown*, supra; 4 Kent's, Com. *528; *Thomas* v. *Carter*, 4 Maine, 341. The laws of Maine, control, *Gilman* v. *Gilman*, 52 Maine, 165.

*Symonds and Libby,*, for the other respondents.

As was said in *Morey* v. *Sohier*, in an opinion announced by the New Hampshire Supreme Court, in March, 1886, and cited in the Albany Law Journal for July 10th, 1886: "In this state many of the conditions upon which the doctrine of implied revocation was formerly based in England no longer exist. Under this alteration of the common law any form of words showing the intent of the testator to devise all the estate which he should own at the time of his decease, passes all his property, real and personal, whether owned at the time of making the will or acquired afterward. If a testator after executing his will makes a conveyance of lands specifically devised, and subsequently becoming re-vested with the title, is the owner of the same land at his decease, it passes by the will as if there had been no alienation."

In 1 Redfield on Wills, 338, it is said : "According to the present English statute, and those of most of the American states, it is only necessary that the will be so expressed, in order to operate upon such estate as the testator may have at his decease, and it is not material, even as to real estate, that he should be seized of the same estate at the time of executing the will, since the instrument will operate upon any estate, coming fairly within its terms, in which the testator is seized of a disposable interest at the time of his death."

Now we submit that under our present statutes and under the established rules for the construction of wills, in which the great object sought to be attained is to arrive at the intention expressed by the testator, it would not be a forced construction of this will to hold that whatever interest in real estate in Savannah, the testator had at the date of his death by virtue of the mortgage, as well as the debt which said mortgage was given to secure, passed under the devise to the nephews and nieces, for whom the trustee was directed to reserve such real estate unless a strong necessity to sell it should arise, and this construction is much more reasonable and more in accordance with the testator's intention, than one which would substantially exclude the heirs from the benefit of their inheritance, and after very trifling

bequests give the whole estate under the last clause in the will to the Union Society of Savannah. See *Dunlap* v. *Dunlap*, 74 Maine, 402.

A testator devised to his daughter H. one-third part of a certain farm, "but if my executor shall think best to sell said farm, then I give to her one-third part of the proceeds of the sale of said farm;" to his daughter S. one-third part of the same farm, "or if said farm is sold, then one-third part of the proceeds of the sale of said farm;" and after a devise to his daughter A. in the same words as to S. added, "And I hereby authorize my executor to sell and pass deeds to convey said farm in such manner as he may think best for all concerned; and divide the proceeds as above directed; but if he should think best not to sell the same then they may take the farm." After the making of his will, the testator in his lifetime sold the farm. Held, that S. was entitled to one-third of the proceeds of such sale. *Clark* v. *Packard*, 9 Gray, 417.

If it be held in this state, *Drew* v. *Wakefield*, 54 Maine, 296, that the distinction has been abolished between a lapsed devise of real estate, and a lapsed legacy of personal estate, and that both now pass by the residuary clause, the same is not true of the law of Georgia.

See 1 Jarman on Wills, p. 635, note 8, in which it is said, "In the absence of all statutory provisions the rule of the common law has been adopted in many states, that void and lapsed legacies go to the residuary legatee, but void and lapsed devises to the heir," citing *Hughes* v. *Allen*, 31 Georgia, 489; *Wird* v. *Mitchell*, 32 Georgia, 623; *Thweatt* v. *Redd*, 50 Georgia, 181.

Undoubtedly if it had been the intention of the testator for the bequest and devise to Anna Marion Wirgman *et als.* or for the bequest and devise to the Union Society, to take effect upon the death of the testator's wife at any time, the effect of her death in the lifetime of the testator would simply be to accelerate the enjoyment of such legacies and devises by removing the prior life-estate out of the way, but in each of these case we submit that the whole context and purport of the will and the conduct of

the testator, so far as it appears as a fact in the present case, tend to show that he did not intend either of these legacies or devises to take effect at all except upon the death of his widow or her re-marriage. The event of her death and of her re-marriage are referred to the same period of time, namely, that succeeding his own decease. See *Tucker* v. *Tucker*, 5 N. Y., 420; *Randfield* v. *Randfield*, 2 De Gex & J. 59.

The argument of the learned counsel for the Union Society wholly misconceives the position which we take in this case. We claim no revocation of the will. We do not deny that the will is to take effect precisely according to the intent expressed in it; nor do we claim that there is any rule of law which prevents the gift over to the Union Society from taking effect in any event in which the testator so designed. If the meaning of this will is that the gift over to the Union Society is to be effective in the event of the decease of the testator's wife in his own life, as well as in the event of her decease after his own death, we do not urge that there is any technical rule of law which prevents that result. We do not deny anything stated by the court in the case cited on the other side, *Morton* v. *Barrett*, 22 Maine, 257. The gift over to the Union Society is just as valid in the event (which happened) of the death of the wife before, as it would have been in the event of the death of the wife after, the testator's own decease, provided that is the testator's intent expressed in the will. What we do deny is, that the will so intends, and we do not see how a doubt arises upon the proposition that the testator was framing the trust in this residuary clause solely with reference to his own death during the lifetime of his wife, and provided only for that event.

It is the aim of all our highest courts — and of none is this more true than of this court — to adopt that construction which reproduces from the will the real intent which the testator himself expressed in it, and for this purpose to consider the man himself, his relations to others, the position in which he stood, the circumstances surrounding him, and to declare what such a man, so placed, meant by the language he used.

We appeal with confidence to all general rules of construction

as in our favor in this case, but general rules hold only when: special facts do not control them, and we respectfully submit that the more carefully the precise language of this will is studied in the light of the situation itself and of the testator's manifest feeling and desire, the stronger the conviction becomes that the· will intended what the man himself intended, and is as far from attempting the wrong which the Union Society would impute to· it, as the testator would be, if he could now declare his intention to the court. Compare *Corbyn* v. *French*, 4 Vesey, 435 ;: *Stewart* v. *Jones*, 3 De Gex & J. 532 ; *Tilson* v. *Jones*, 1 Russell & Mylne, 553 ; *Cowley* v. *Knapp*, 13 Vroom, 302-3·;: *Randfield* v. *Randfield*, 2 De Gex & J. 57 ; *Nash* v. *Simpson*,. 78 Maine, 147.

VIRGIN, J.   The testator, a resident in this state, executed his; will February 3, 1883, died April 23, 1885, and his will was· probated the succeeding June.

At the date of his will he had a wife and five nephews and. nieces — children of his only sister, residents in Philadelphia.. He also owned one moiety of certain real estate in Savannah;. Georgia — which was all he owned there — and his nephews· named, owned the other moiety.

After giving certain specific legacies to various persons, the testator bequeathed and devised to the plaintiff as his trustee, all the residue of his estate real and personal upon certain trusts,. and authorized him to lease, exchange, sell and convey any or all. of his estate for the purpose of executing the provisions of his; will.

The trusts specified were : to hold, manage, care for and invest; all the residue of his estate real and personal according to his. best discretion and judgment, pay the annual income thereof to, his wife so long as she shall remain his widow ; should that not. suffice, then the trustee should add thereto, irrespective of any other source of income possessed by her, such a sum out of the principal as would suffice — but that he should not sell the real estate in Savannah, "until a strong necessity should arise there- for," and "to divide so much of his estate, as may be remaining

upon the death or re-marriage of his wife, among his residuary legatees as provided in this will."

He then bequeathed and devised upon the death or re-marriage of his wife, unto four of his Philadelphia nephews and nieces — Anna M. Wirgman, John M. Durborrow, Richard N. Durborrow and W. F. H. Durborrow — " to hold in equal shares, all his real estate in Savannah."

He then bequeathed and devised "upon the death or re-marriage of his wife, all the residue of his estate real and personal, to the Union Society of Savannah," a society duly incorporated for charitable purposes.

After the execution of the will but before the decease of the testator, his wife died. Thereafter, on July 31, 1884, the testator sold and conveyed his real estate in Savannah, for the sum of fifteen thousand dollars — five thousand dollars cash, and two notes of five thousand dollars each payable in one and two years respectively with interest, secured by a mortgage on the premises. The notes were entrusted by the testator to the husband of one of the devisees for collection, who after the decease of the testator collected the first note and interest on both to July 31, 1885, and remitted the same to the plaintiff as executor, and the second note still remains unpaid in the custody of him to whom it was entrusted.

Not only the surviving nephews and nieces, but the Union Society claim the proceeds of the Savannah property. In their answer the former claimed them and " the interest of the testator therein, by virtue of the mortgage as belonging to them under the will." At the argument the claim is that the trust declared was based on the contingency that his wife would survive the testator, in which event the residuum was to go to the trustee; but that in the event which actually happened of his wife's death preceding his own, the will is silent and that such property remains undisposed of by the will and is to go according to the rules of inheritance under the law of the state of Georgia.

The testator's domicile having been in this state the construc-

tion of his will and its effect depend upon the law here. *Gilman* v. *Gilman*, 52 Maine, 165.

It is settled law that whether searching for the meaning of the whole, or of any particular clause of a will, the intention of the testator as collected from all of its provisions and its general scope is the criterion for its interpretation ; and when that intention is ascertained full latitude can be given to it provided it conforms to those settled rules of law which establish and secure the rights of property. *Anderson* v. *Parsons*, 4 Maine, 423, 425 ; *Morton* v. *Barrett*, 22 Maine, 257 ; 4 Kent's, Com. *535.

Doubtless the provisions of the will in controversy establishing the trust are based on the testator's expectation that his wife would survive him, and that her death and re-marriage referred to a time subsequent to his own decease. It is equally certain that when he executed his will, he intended that the four children of his only sister mentioned by name therein as devisees, should after his decease have his moiety of the Savannah real estate, or so much thereof as should not be needed for the maintenance of his widow in "that style and station to which she had been accustomed as his wife." And if the title to that property had been in the testator at his decease probably no question would have arisen in regard to the devisees' title.

But his own sale and conveyance of it after the death of his wife, when it was no longer possibly needed for her support under the will, took it away from the provisions of the will so far as it related to the trust and the devise to his nephews and nieces, and thus revoked *pro tanto* those devises. *Carter* v. *Thomas*, 4 Maine, 341 ; *Hawes* v. *Humphrey*, 9 Pick. 350, 361 ; *Webster* v. *Webster*, 105 Mass. 542. In *Brydges* v. *Duchess Chandos*, 2 Ves. p. 417, the Chancellor declared this to be a principle of the common law not to be shaken in point of authority. It is the rule laid down in all of the elementary works on Wills and Devises as well as in a multitude of judicated cases.

And the fact that the testator took back a mortgage which passed no title, but simply created a lien upon the property for security of a part of the purchase money, does not prevent the

partial revocation. *Adams* v. *Winne*, 7 Paige, 97 ; *Beck* v. *McGillis.* 9 Barb. 35 ; *McNaughton* v. *McNaughton*, 35 N. Y. 201.

"Conveying a part of the estate upon which the will would otherwise operate," said WESTON, J., "indicates a change of purpose in the testator as to that part ; and suffering the will to remain uncanceled, evinces that his intention is unchanged with respect to other property bequeathed or devised therein." *Carter* v. *Thomas, supra.* Kent's Com. (12th ed.) *529. And implied revocation is recognized in R. S., c. 74, § 3.

The proceeds of the sale of the Savannah property cannot go under the will to the nephews and nieces as devisees, for the will contains no such provision, as did the wills in *Clark* v. *Packard*, 9 Gray, 417 ; *Atwood* v. *Weems*, 99 U. S. 183 ; *McNaughton* v. *McNaughton, supra.*

If after the decease of his wife the testator still intended that the real estate which he had devised to his nephews and nieces, should go to them, why did he sell and convey it to a stranger — why not convey it to them and thus execute his own will in that respect ; and if he intended they should have proceeds of the sale, why did he take the cash and entrust the notes to the husband of one of them for collection instead of passing them over as their property ?

If the proceeds do not go by the will to the devisees of the land to whom do they go ? The nephews and nieces contend that they are not disposed of in any manner by the will, but are intestate property and hence go by descent to the next of kin ; while the Union Society claims that they fall to it through the residuary clause. And this result we think is in accordance with the rules of law. Rules of law are necessarily general, and sometimes operate harshly, but still they are land-marks which must be observed.

It is not to be disputed that a general legatee as distinguished from a particular legatee is entitled to everything which "turns out not to be disposed of," 2 Wms. Ex'rs, (6Am. ed.) 1567 and notes. 2 Jar. Wills, *762 ; *Bosley* v. *Bosley*, 14 How. 391 ; *Drew* v. *Wakefield*, 54 Maine, 291 ; *Thayer* v. *Wellington*, 9

Allen, 283, 295. "Because the testator is supposed to take the particular legacy from the residuary legatee only for the sake of the particular legatee ; so that upon the failure of the particular intent, the court gives effect to the general intent." 2 Wms. Ex'rs, 1569 ; 2 Jar. Wills, *762.

To be sure, the testator may by the terms of the bequest narrow the title of the residuary legatee so as to exclude lapsed legacies. *Dunlap* v. *Dunlap*, 74 Maine, 402 ; 2 Wms. Ex'rs, (6 Am. ed.) 1571. 2 Jar. Wills. *762 ; *Bullard* v. *Goffe*, 20 Pick. 252 ; *Tindall* v. *Tindall*, 9 C. E. Gr. 512, and cases cited. In this will, however, we find no such language as would seem to bring the residuary clause — whereby "upon the death of his wife all the residue of the testator's estate real and personal'. was to go to the Union Society — within this rule.

The result is, the proceeds of the sale of the Savannah real estate falls into the general residuary clause in behalf of the Union Society.

> *Bill sustained. Costs of both parties to be paid by the executor, including reasonable counsel fees.*

PETERS, C. J., WALTON, LIBBEY and HASKELL, JJ., concurred.