R. C. DUNLAP, Administrator, et al., Appellants, v.
I. S. HART et al.

### Division Two, June 3, 1918.

1. **PARTIES: Interest in Land: Administrator as Plaintiff: Not Raised at Trial.** The point that the administrator of the deceased claimant is not a real party to the suit to establish an interest in the land and therefore has no standing in court, if not raised by demurrer or specific answer in the trial court, will not be ruled on appeal.

2. **WILL: Subsequent Sale of Devised Land: Ademption: Title of Devisee to Other Land Purchased.** A devise by the owner of specific lands to his wife, a subsequent sale by him of those lands and a purchase, with the proceeds of the sale, of other lands, did not. pass the title of the lands so purchased to her, but there was an ademption of the devise, and there being no residuary clause in the will the subsequently acquired lands passed by inheritance to his heirs.

3. ————: **Revocation by Sale.** Both by common law and the statute a sale of all the property devised operates as a revocation of the will *in toto*, and a sale of a part of the devised property operates as a revocation *pro tanto*.

4. ————: **Intention: Sale of Lands Devised to Wife.** Unless the will contains a residuary clause declaring that all of testator's property should pass by the will, or there is some other clause in the will expressly relating to the matter, it cannot be held that it was the intention of the testator that lands acquired by him after making his will should pass to his wife in lieu of those specifically devised to her but sold by him at the time or prior to acquiring the others, for the will does not express any such intention.

5. ————. **Presumption of Testator's Intention to Devise All Property.** The presumption that a testator does not intend to die intestate as to any part of his property, applicable to throw light upon the testator's intention when that intention is dark and is to be ascertained from the language used, is not to be invoked to illuminate a condition arising long after the will was written. It is inapplicable as a guide in determining whether by a perfectly plain will, by which testator devised specific lands to his wife, which he subsequently sold, other lands bought with the proceeds were devised to her by the will in lieu thereof.

6. ————: **Construction: Operation.** The language of a will is to be construed in the light of the circumstances existing when it was written. The will operates upon the property existing at the time of testator's death.

Appeal from Buchanan Circuit Court.—*Hon. Charles H. Mayer,* Judge.

AFFIRMED.

*Culver & Phillip* for appellants.

(1) Though William B. Hart did not own the DeKalb property or the eighteen acre tract in Buchanan County involved in this controversy at the time he executed his will, he did own it at the time of his death. Real property acquired after the execution of a will may pass under the will in this State, Liggatt v. Hart, 23 Mo. 127; Applegate v. Smith, 31 Mo. 166; Webb v. Archibald, 128 Mo. 299; 40 Cyc. 1045. (2) The "polar star" in the construction of a will is the intention of the testator. McCume v. Goodwil, 204 Mo. 337; Gannon v. Pauk, 200 Mo. 85. (3) The presumption is that a testator does not intend to die intestate as to any part of his property; and a will should be construed to dispose of all his property, if it is susceptible of such construction; and for the purpose of ascertaining and expressing the intent of the testator, words and sentences in the will may be transposed, added or omitted. McMahan v. Hubbard, 217 Mo. 637; Meiners v. Meiners, 179 Mo. 614; Durboraw v. Durboraw, 67 Kan. 139; Simmonds v. Cabanne, 177 Mo. 353; Briant v. Garrison, 150 Mo. 655; Nichols v. Bothwell, 103 Mo. 151; RoBards v. Brown, 167 Mo. 447; Farish v. Cook, 78 Mo. 212; Webb v. Archibald, 128 Mo. 299. (4) Ordinary technical rules for construction of wills should be disregarded when they conflict with the intention of the testator. Weed v. Jennings, 45 Mo. 91; Suyden v. Trayer, 94 Mo. 48; Drake v. Crane, 127 Mo. 85. (5) The will of William B. Hart devised and bequeathed all of the testator's property to his wife. The description of the real estate contained in the will was not intended as a limitation of the devise, but only as a description of the real property the testator owned at the time he executed the will. Durboraw v. Durboraw, 67 Kan. 139.

*James W. Boyd* for respondents.

(1) Appellants say that real property acquired after the execution of the will, may pass under the will. In the cases cited by the appellants the wills devised all the real estate of the testator. There is no such provision in the will of William B. Hart. (2) If we consider the intention of William B. Hart in this case he never intended to devise the property mentioned in the petition. He lived many years after the will was made, and after he sold the real estate mentioned therein. If he had desired to will the property mentioned in the petition he had many years in which to do so. (3) In the case of Durboraw v. Durboraw, refered to by the appellants, the testator used the following language: ''Second. I hereby devise and bequeath to my grandson, Alexander Durboraw, all my real and personal property of every description and wherever situate.'' (4) No case has been cited by the appellants which would authorize the court to insert in Mr. Hart's will, lands other than those therein described. There is no residuary clause in the will.

FARIS, J.—This is a suit to determine interest in two certain tracts of land situate in Buchanan County. On the trial, the court found in favor of defendants and adjudged them to be the owners in fee of the disputed lands. Plaintiff thereupon appealed.

Plaintiff R. C. Dunlap is the administrator *cum testamento annexo,* of one Susan C. Hart, deceased; the other plaintiffs are the residuary legatees of said Susan C. Hart. Defendants are the heirs at law of one William B. Hart, deceased, who was the husband of the said Susan. William B. Hart executed his will in 1891, and died in 1906. By the terms of this will he gave all of his personal property and *two specifically described parcels of real property* to his wife, Susan C. Hart. But sometime during the fifteen years which

elapsed between the execution of his will and his death, he sold and conveyed the land which the will specifically describes, and subsequently purchased the two tracts of land now here in controversy. It is not proven, but merely to be inferred as probable, that the lands in dispute were purchased with the proceeds of the lands described in the will. The whole controversy turns, therefore, upon the terms of, and the effect to be given to, the will of William B. Hart. This will is brief, and barring the formal parts, signatures and attestation of witnesses, all of which are conventional, it reads thus:

"1. I give and bequeath to my beloved wife, Susan C. Hart, all of my real estate in fee simple and all appurtenances thereto belonging and described as follows: Ninety-six and 22-100 acres of land in the northeast quarter of Section No. three in Township fifty-five, of Range thirty-six; also forty-three acres of land at the southwest corner of the southeast quarter of Section No. thirty-four, of Township No. fifty-six, of Range No. thirty-six, all of said land being in Buchanan County and State of Missouri.

"2. I also give and bequeath to my beloved wife, Susan C. Hart, all of my personal property—household and kitchen furniture, beds and bedding, money, notes and all of my personal effects of every kind and description.

"3. I do hereby appoint my said beloved wife, Susan C. Hart, the executrix of this, my last will and testament, and I hereby direct that she shall not be required to give bond by the probate court."

Susan C. Hart died in 1913, testate, and by the terms of her will she devised all of her personal and real property (which plaintiffs contend includes the lands here in dispute) to the plaintiffs, except Dunlap. She named as executor of her will one James R. Miller, and provided that he should sell all of her real and personal property and divide the proceeds thereof as elsewhere in her will provided. Prior to the death of Susan C. Hart said Miller departed this

life, and plaintiff R. C. Dunlap was by the probate
court duly appointed administrator *cum testamento
annexo* of her estate.

The single question in the case and that which is
decisive of it, is whether the will of William B. Hart
had the effect to devise to Susan C. Hart, his wife,
the real estate which he acquired after
he had sold all of the real estate which
he devised to her by specific description.
If it did, the judgment *nisi* is erroneous and must be
reversed.

**After Acquired Lands.**

On the threshold, we may say in passing, some
vague point is made by respondents that Dunlap as ad-
ministrator has no standing in court as a plaintiff; for
that he is not a real party in interest, no part of the
title here sought to be determined being, it is averred,
in him. We need not concern ourselves about this
contention, since if Dunlap is not a necessary party
this question ought to have been raised by demurrer or
specifically by answer. It was not raised by demurrer,
or anywhere else in the pleadings, and so defendants
cannot be heard now to raise it here for the first
time; even should we find ourselves compelled for
another reason to reverse the case.

Did the language which we quote from the will of
William B. Hart pass to his wife, by devise, the lands
of this testator which he subsequently acquired after
the sale of the lands specifically described and devised
to her in the will? We do not think so.

There can be no doubt but that the will of William
B. Hart (hereinafter called, for the sake of brevity,
the testator), devised specific lands to his wife. We
quote the whole pertinent parts of the will and from
this will the fact of specificness of devise conclusively
appears. We think there was an ademption of the de-
vise, when the testator before his death conveyed away
the land devised. From which it follows that the sub-
sequently acquired real estate of testator passed by
inheritance to his heirs.

The rule at common law (pursuant to the Statute 32 Henry VIII., however, rather than to the common law strictly speaking) was that a will spoke as of its own date and not as of the date of the death of the testator, and therefore after-acquired lands could not even be the subject of a devise by will, whatever might be the intent of the testator touching such lands. [In Re Miller, 128 Iowa, l. c. 616; Liggat v. Hart, 23 Mo. l. c. 134.] This harsh rule has been modified in England by statute, 1 Vic., ch. 26, and by statute in most of the states of the American Union. Absent an examination into the legal history of our own enactments on this point, it is a little difficult to appreciate that we, too, have changed this rule. The statute in this State by which a testator was given the power to devise after-acquired real estate was passed in 1807. [Laws of Territory of Louisiana 1807, ch. 39, sec. 18, p. 131.] It changed the English rule and gave the power of disposition of after-acquired lands by providing in substance that any person of full age could devise by will *all real estate then owned,* or *which he might have at his death.* In the revision of 1835, seemingly in an effort to retrench and reform by the excision of words deemed surplusage, the words ''which he or she hath, or at the time of his or her death shall have'' were omitted, and the statute was made to read subsequently as it now appears (Cf. Sec. 1, p. 617, R. S. 1835; Sec. 535, R. S. 1909) but conferring the power upon a testator to devise by last will ''all his estate, real, personal and mixed, and all interest therein.'' The Act of July 4, 1807, first above referred to, further provided that the judges of all orphan's courts and all others concerned in the ''execution of any last will'' should have due regard to the direction of the will and to the true intent and meaning of the testator in all matters brought before them. [Sec. 48, p. 137, Ter. Laws Mo.] In the Revision of 1825, this language was changed to read ''all courts,'' and so, in substance has the command to construe a will by the ''four corners'' ever since remained. [Cf. Sec.

24, p. 796, R. S. 1825; Sec. 583, R. S. 1909.]    While
Section 538, Revised Statutes 1909, provides the manner
in which a will may be revoked, we are of opinion that
the latter section refers to revocation *in toto,* though
it forbids, as well, revocation by interlineation (absent
republication and reattestation) or by word of mouth.
We do not think that any statute in this State has
had the effect to change the rule at common law,
governing revocation by a sale of the devised property.
[Cozzens v. Jamison, 12 Mo. App. 452.]    This rule
was that a sale of all of the property devised operates
as a revocation *in toto* (Baacke v. Baacke, 50 Neb.
18; 30 Am. & Eng. Encyc. Law, 652; Ametrano v.
Downs, 170 N. Y. 388; Brown v. Thorndike, 15 Pick.
407; Hawes v. Humphrey, 9 Pick. 361; Worrill v.
Gill, 46 Ga. 482; Webster v. Webster, 105 Mass. 538),
and a sale of a part of the devised property *operated*
as a revocation *pro tanto.*    [Moore v. Spier, 80 Ala.
129; Warren v. Taylor, 56 Iowa, 182; Forney's Estate,
161 Pa. St. 209; Emery v. Union Society, 79 Me. 334;
Graham v. Burch, 47 Minn. 171; Wells v. Wells, 35
Miss. 638; In Re Miller, 128 Iowa, 612.]

Strictly speaking, and on the theory that the will,
perforce the statute, speaks from the death of the
testator, it is obviously not entirely accurate to speak
of a failure of the will to pass specifically devised
property, because such property has been theretofore
disposed of, as a revocation of the will.    But since such
devise fails because of the fact that when the will be-
comes effective, the testator had no property within
the terms of the gift, the disposal of the property
prior to death *operated* as a revocation *in toto,* or
*pro tanto,* according as the whole or only a part of
the property was disposed of by the testator before
his death.    The failure of the devise by a sale, is in the
nature of an ademption of the devise, which ademption,
if it shall by a sale or disposal extend *to all the prop-
erty* of the testator, obviously operates as a revocation.
In the case of Ametrano v. Downs, supra, it was
said:    "If a testatrix devises real estate and sells

Dunlap v. Hart.

the same before the will takes effect, the proceeds of the sale will become personal estate and no court can substitute the money received by the testatrix for the land devised.''

Speaking of this latter point and to others cognate, the Supreme Court of Iowa in the case In Re Miller, supra, at page 617, said:

"The conveyance of the subject of the devise operates as a revocation of the will to the extent of the property thus disposed of. [Warren v. Taylor, 56 Iowa, 182. See, also, cases cited in 30 Am. & Eng. Ency. Law (2 Ed.), 622, 623.] On the theory, however, that the will speaks from the death of the testator and with reference to his estate as it may then exist, it is perhaps not strictly accurate to speak of the result as a 'revocation' but the devise fails because, when the will becomes effective, the testator has no property within the terms of the gift. [Warren v. Taylor, 56 Iowa, 182; McNaughton v. McNaughton, 34 N. Y. l. c. 204.] It is equally well settled that upon sale of devised real property by the testator the proceeds of such sale of which he may die possessed will not be substituted for the property itself, unless a direction so to do is found in the will. [Adams v. Winne, 7 Paige, 97; Gilbert v. Gilbert, 9 Barb. 532.]''

But it is ably argued that the well-settled rule (enjoined upon us by the statute itself), of construing a will according to the true intent of the testator compels us to hold that the subsequently acquired lands passed by the will in lieu of those specifically devised but sold by the testator before his death. We do not think the statute nor the rule stated and bottomed on the statute requires us to go so far. If such was in fact the intention of the testator, we agree that the common law has been so far changed as to have permitted the use of a residuary clause by the testator explicitly declaring that all his property, without description or reservation, should pass by the will; but as we have seen there is no

such clause. And so the difficulty we meet upon this contention is, that the will made does not express the intent urged on us.

In a case similar, if not on all-fours with the instant one, it was held by the Supreme Judicial Court of Maine that where a testator devises real estate and subsequently conveys it to a person other than the devisee, the devise thereby becomes impliedly revoked, and in such case, the proceeds of the sale, absent a specific provision in the will so declaring, do not go to that devisee, but to the residuary legatee. [Emery v. Union Society, 79 Me. 334.] And the above case was so ruled, *although the rule of construction according to the true intent of the testator was fully recognized as being in force in Maine.*

This precise point is a matter of first impression in this court, so far as our own researches, or those of counsel in the case, have enlightened us. For they have cited us no local cases in point, nor have we been able to find any precisely apposite. Discussing, however, what we consider the principles involved, it was held by the St. Louis Court of Appeals that the alienation of devised property by the testator in his lifetime renders the will *pro tanto* void, notwithstanding our statute providing the methods of revoking wills. [Cozzens v. Jamison, 12 Mo. App. 452.] In this case the learned St. Louis Court of Appeals, at page 457, said:

"The doctrine runs through all the cases, that the devisor must be seised of the same estate at the time of his death that he was seised of when he made his will, to make it a good devise. [Ballard v. Carter, 5 Pick. l. c. 116.] If there is a subsequent conveyance of the whole estate, the testamentary disposition is defeated wholly. If the conveyance be of a part only, the operation in *pro tanto*. [Toll. Ex. 19.]"

The case of Durboraw v. Durboraw, 67 Kan. 130, is urged as being precisely in point. We cannot agree to this suggestion. There was in that case what we regard as a fairly plain residuary clause. In fact,

the case rode' off upon this very point. For the Supreme Court of Kansas in effect ruled that all of the property passed by what was tantamount to a residuary clause. Hence, in our view the Durboraw case has no compelling, or even appealing, relevancy to the vex- ing question confronting us in the case at bar.

The presumption that a testator does not intend to die intestate as to any part of his property is also urged as a reason why we should hold that the after- acquired property passed by this will. We recognize and concede the rule urged. [McMahan v. Hubbard, 217 Mo. l. c. 637.] But we think it has no application to the condition presented. The proper function of the presumption invoked is to throw light upon the intent of the testator when that intent is dark and it is sought to ascertain it from the language used in the will. Such a presumption performs but a negligible office when invoked to illuminate a condition arising long after the will was written, and which originated wholly *dehors* the words of the will and years sub- sequent to the execution thereof. In such case it would seem that since the thing done was tantamount to and operated as a revocation *pro tanto,* the latter intention is as easily to be inferred from the facts as the former. That the presumption arises in an effort to *construe the language used in the will* in the light of the circumstances existing when the will was written, seems obvious from the reason given for invoking it at all; for it is said that the presumption is used in order "that the instrument may not perish and the manifest intent of the parties be not defeated by the palpable error of the scrivener." [McMahan v. Hub- bard, supra.] Here there is no suggestion that the scrivener did not write exactly what the testator intend- ed should be written. If the conditions had not changed years afterwards the language of the will was in all things clear and sufficient. The difficulty is not that the language does not express the intent

274 Mo.—39

which was in the mind of the testator when he made the will; the difficulty lies in the fact that years afterwards the testator changed his mind. The language of a will is to be construed in the light of the circumstances existing when the will is written; the will operates, however, upon the property existing when death occurs.

We conclude that the learned trial court took the proper view of the case and that the judgment ought to be affirmed. Let it be so ordered. All concur.