## BURCH v. McMILLIN et al. (No. 530.)

Court of Civil Appeals of Texas. Eastland. Jan. 25, 1929.

Rehearing Denied March 15, 1929.

Seay, Seay, Malone & Lipscomb, of Dallas, and Thomas & Shapard, of Anson, for appellant.

Wagstaff, Harwell, Wagstaff & Douthit, of Abilene, and Foster, Hall, Smith & Blue, of Shreveport, La., for appellees.

HICKMAN, C. J. The appellee Benton McMillin as plaintiff sued John C. Brown, Jr., and wife, Martha R. Brown, Brown Burch, and certain owners of land under deeds from Brown Burch, in trespass to try title, for an undivided one-third interest in two sections of land in Jones county. During the course of the trial Lucille Foster McMillin, joined pro forma by her husband, Benton McMillin, and Joseph D. Oliver, Jr., intervened, adopting plaintiff's pleadings, and prayed for such recovery as the facts showed them entitled. There is practically no dispute in the evidence. It discloses that in 1877, Governor John C. Brown, of Tennessee, purchased of Henry Stebbins seven sections of land in Jones county, including the two sections in litigation. Five of these sections were conveyed by him during his lifetime, leaving only two of the sections remaining as his property at the time of his death. At the time of the purchase of this land and at the time of the execution of his will, which will be hereinafter noticed, Governor Brown was married to Mrs. Elizabeth (or Bettie) Brown; his first wife having died childless. Four children were born to Governor and Mrs. Bettie Brown, all of whom were living at the time of the purchase of this land and of the execution of the will. The names and brief subsequent histories of these children follow:

(1) Marie (or Minnie) Brown, a daughter, who married appellee, Benton McMillin, in 1886. She died in November, 1887, prior to the death of her father, leaving surviving her her husband and one infant son, Brown McMillin. Brown McMillin died in 1912, intestate and unmarried. Benton McMillin, after the death of his first wife, married Lucille Foster McMillin, who is still living, and who is one of the appellees herein. There was born to Benton and Lucille Foster McMillin one child, a daughter, Elina, who married Joseph D. Oliver, Jr. Elina McMillin Oliver survived her half-brother, Brown McMillin, and Mrs. Bettie Brown, but died intestate subsequently, leaving as her only heirs her husband, Joseph D. Oliver, Jr., and her father and mother. It thus appears that Benton McMillin and wife, Lucille Foster McMillin, and the husband of their deceased daughter, Joseph D. Oliver, Jr., are the owners, as heirs of Brown McMillin and Elina McMillin Oliver, of all the interest, if any,

formerly owned by Brown McMillin in the land in controversy.

(2) Daisy Brown, a daughter, who died unmarried and intestate, prior to the death of either her father or her mother.

(3) John C. Brown, Jr., who is still living, and who was one of the defendants below.

(4) Birdie Brown, a daughter, who married a man named Burch, and who died subsequent to her father's death, leaving one son, Brown Burch, the appellant.

Governor Brown died in 1889, testate. His widow died in 1919, intestate. After the death of Mrs. Bettie Brown, her son, John C. Brown, Jr., and grandson, Brown Burch, being her only living descendants, caused the land in litigation herein to be partitioned between themselves in the district court of Jones county; one-half of the land being awarded to each in the partition. Brown Burch subsequently sold the lands awarded to him to certain purchasers, who were made parties below, but need not be further noticed in this opinion. John C. Brown, Jr., had not conveyed any of his lands at the time of the trial.

It was held in the trial court that the land in question was the separate property of Governor Brown; that his will did not vest fee-simple title thereto in Mrs. Bettie Brown, but created a trust; that at her death in 1919, the lands were owned by John C. Brown, Jr., Brown Burch, Benton McMillin, and his daughter, Elina McMillin Oliver, as tenants in common; that Benton McMillin and wife, Lucille Foster McMillin, and Joseph D. Oliver, Jr., who jointly stood in the shoes of Brown McMillin, deceased, after the death of Elina McMillin Oliver, were entitled to a one-third interest in the lands. Since Brown Burch had sold the one-half interest awarded to him in the partition decree above mentioned to purchasers in good faith, who had paid a valuable consideration therefor, and made valuable and permanent improvements thereon, it was decreed that the one-third interest of Benton McMillin and his associates be carved out of the lands awarded to John C. Brown, Jr., in the partition and still owned by him, and that the grantees under Brown Burch and their privies be quieted in their title. Brown Burch alone excepted to the judgment, gave notice of appeal, and has perfected his appeal to this court. All other parties to the original suit are appellees here, but for convenience, where the term "appellee" is used in this opinion, it will refer only to Benton McMillin, Lucille Foster McMillin, and Joseph D. Oliver, Jr., the owners of the Brown McMillin title.

The first question for determination is presented by appellees, who claim that Brown Burch has no right to complain of the judgment rendered in this cause or to appeal therefrom, and that this appeal should therefore be dismissed. It is pointed out that no judgment whatever was rendered against appellant below, except for court costs; that all of the persons to whom he conveyed his interest in the lands were quieted in their title, and appellees' entire interest was carved out of the land of John C. Brown, Jr., who did not except to the judgment below nor perfect an appeal to this court. This contention is overruled. Appellant, by virtue of the partition decree, is a warrantor of the title of John C. Brown, Jr., to all of the land awarded to him in that decree. R. S. 1925, art. 6100; Harn v. Phelps, 65 Tex. 592; O'Conor v. Sanchez (Tex. Com. App.) 229 S. W. 309.

By article 7368 of the Revised Statutes, when a warrantor is made a party defendant in a suit for land, he is entitled to make such defense as if he had been the original defendant in the action. If the judgment rendered below in this case becomes final, then John C. Brown, Jr., will have received only a one-sixth interest in this land, while appellant will have received a one-half interest therein. Clearly Brown will have an action against appellant on his warranty in order to equalize the distributive shares of these two heirs. If the judgment below becomes final, appellant will be thereby cut off from any defense to such suit by Brown. Appellant's statutory right to defend a suit as a warrantor necessarily, to our minds, carries with it the right to appeal from a judgment against his warrantee.

The contention that appellant and John C. Brown, Jr., were wrongdoers in partitioning this property between themselves without recognizing the rights of appellees, and that, in a suit brought by the latter against the former to adjust equities, the court should leave them as it finds them, is not, to our minds, supportable. The effect of this contention is to call on this court to prejudge the actions of appellant and Brown and declare them wrongdoers in not recognizing appellees' title without affording appellant the opportunity to establish, if he can do so, that appellees' claim of title is fictitious. That fact cannot be determined by us without allowing this appeal.

As this case must be determined largely by a construction of the will of Governor John C. Brown, the substance of that will is here given as follows:

It consists of eight items. Item first provides a method for the payment of testator's debts. Item second gives certain personal property to "my little son, John C. Brown." Item third reads as follows:

"I give my homestead and all its appurtenances, household and kitchen furniture, tableware, pictures and ornaments, organ, carriage and horses to my beloved wife Bettie Brown."

Item fourth gives a piano to Minnie Brown, who later became Mrs. McMillin, and provides for the purchase of pianos for the other two daughters.

"Item Fifth—To each one of my four chil-

dren, Minnie, Daisy, Birdie and John C. Brown, I give a section of land in Jones County, Texas, to be selected by their mother, or by some agent appointed by her, out of seven sections recently purchased from Henry Stebbins."

Item sixth provides for the cancellation of certain notes owing by a nephew.

"Item Seventh—The balance of my estate of every kind and description, wherever situated, I give and bequeath to my wife, Bettie Brown, in trust, for the use and benefit of herself and our little children, with full power to sell, convey, or exchange the same, and use the proceeds, or reinvest them, as she may see fit. In a word, realizing that she feels the same interest in the welfare of our children as I could or would, if alive, and being unwilling to embarrass her as to limit her discretion, I confide to her my estate, without condition, limitation or restriction."

"Item Eighth—I constitute and appoint my wife, Bettie Brown, sole executrix of my will, and direct that no security be required of her in the execution of that trust."

■■ The land in controversy is shown to be the land bought by Governor Brown from Henry Stebbins. Five of the seven sections originally bought were sold by the testator in his lifetime, leaving remaining at his death the two sections in litigation herein. It is the contention of appellant that, since there were three heirs of Governor Brown at the time of his death and but two sections of land, it was impossible to carry out the directions of item fifth, and on that account there was an ademption of the specific devises contained in that item, and these two sections of land thereby passed into and became a part of the residuum of the estate, and passed under the provisions of item seventh. An ademption would have resulted had the testator sold all of the land covered by this item, for it is well settled that the alienation by the testator of the subject of a specific legacy adeems the legacy. But it is also well settled that the doctrine of ademption by alienation operates pro tanto only, so that, where but part of the legacy has been alienated, the remainder passes to the legatees. Note, 40 L. R. A. (N. S.) 549; note, 95 Am. St. Rep. pp. 353, 354; note, 37 Am. Dec. 667; 40 Cyc. pp. 1919, 1920; Page on Wills (2d Ed.) vol. 1, § 457; Succession of Canton, 144 La. 113, 80 So. 218; Reynolds' Executor v. Reynolds, 187 Ky. 324, 218 S. W. 1001; Dunlap v. Hart, 274 Mo. 600, 204 S. W. 525, 3 A. L. R. 1493.

We therefore conclude that, upon the death of Governor Brown, the fee title to this land passed in equal proportions to his son, John C. Brown, Jr., his daughter, Mrs. Burch, mother of Brown Burch, appellant, and his grandson, Brown McMillin, whose interest is now owned by appellees, and that no part of the fee passed to Mrs. Bettie Brown, but that she came into possession thereof as executrix.

■ Error is assigned by appellant to the action of the trial court in not sustaining his plea of ten years' statute of limitation. The statement in appellant's brief under this proposition, in which is set out the testimony claimed to be sufficient to establish title by limitation under this statute, is insufficient to show any ten consecutive years of occupancy of this land by Mrs. Bettie Brown through her tenants. The evidence discloses leases made by Mrs. Brown for several different years, but not for more than three or four consecutive years at any period. It further discloses that some years a lease would be made by John C. Brown, Jr. This character of evidence is insufficient to establish a limitation title. The evidence is further insufficient in that it fails to show that Mrs. Brown ever at any time claimed this land adversely to her children. But, should we be in error regarding the sufficiency of the evidence to establish a limitation title as between persons not occupying fiduciary relations, still we think that plea is unavailing to appellant here. Appellant contends that Mrs. Brown could not hold these lands as executrix, for the reason that no ancillary administration was taken out in this state; that until 1915 a foreign executor had no rights in Texas in the absence of an ancillary administration; and that, as executrix, she would have had no authority or color of authority to take possession of this property. It is accordingly claimed that her acts in doing so were unlawful and in derogation of the rights of the owners, to whom she occupied no fiduciary relation so far as the Texas property was concerned. To our minds, this contention is untenable. Whatever limitations the laws of our state placed upon her as an executrix in this state, they did not change the fiduciary relation by which she entered into possession of this property. The duty to sue out this ancillary administration rested, not upon the legatees, but upon the executrix herself, and, under well-established principles, she could not be derelict in that duty and profit thereby at the expense of her own children. Further we think it proper to state that there is not a suggestion in this record of the least desire on the part of Mrs. Brown to be unfaithful to the trust reposed in her by her deceased husband or to her duties to her children, and their offspring. The effect of sustaining this contention of appellant would be to take all of the title from the children and grandchildren and vest it in Mrs. Brown by limitation, and then have that title descend upon her death to her own heirs, and in this way exclude appellees, who are not heirs of Mrs. Brown. But, in order for the title to follow this course, the record must establish that Mrs. Brown was claiming adversely to her own children. The trial court found that she was not, and in

this finding was well supported by the record.

The conclusions above announced lead to an affirmance of the judgment of the court below, without regard to the correctness of the conclusions which shall follow. There may be no necessity for disposing of any other questions, but, since appellant's brief is devoted almost entirely to an analysis of the case based upon the theory that the specific bequests of item fifth and this property went into the residuum of the estate and passed under item seventh, we think it proper to dispose of the case upon this theory also.

■ It is earnestly insisted that item seventh of the will vested in Bettie Brown fee-simple title to the residuum of Governor Brown's estate, and that John C. Brown, Jr., and Brown Burch, being the only living descendants of Bettie Brown, who died intestate, inherited full title to the land in litigation. The theory upon which it is claimed that item seventh vested fee-simple title to the property in Mrs. Brown is that there is irreconcilable conflict between the first sentence of that item and the second sentence thereof, and therefore the latest expression of the testator's will must control. Admittedly the first sentence of this item creates an active trust, with Mrs. Brown as trustee and herself and "our little children" as cestuis que trustent. Is the second sentence in irreconcilable conflict with that provision? To our minds there is no conflict at all between the two. The last sentence is a restatement in clear and well-selected language of the same thought contained in the first, and has the effect of making clearer the provisions of the first bequest. It will be observed that the only place in the entire item where the words "give" and "bequeath" are used is in the first sentence, and the gift and bequest in that sentence is expressly in trust. The second sentence explains testator's reason for carving out of the fee-simple estate, which would pass to his children under the laws of descent and distribution of Tennessee, a trust estate to be administered by his wife for her use and the use of the children. It expresses confidence in her and confides to her his estate. The word "confide" is a synonym of the word "trust." Corpus Juris thus defines confide: "To put into one's trust or keeping." The will as a whole evidences an ability on the part of the testator to express himself clearly in few words and to employ those words which convey the exact shade of meaning desired. Item seventh, to our minds, created an active trust with unlimited powers in the trustee.

■■ Appellant says that, if this item created a trust, then Mrs. Brown, who was expressly named as one of the cestuis que trustent, clearly was vested with fee-simple title to a part of the property on equal terms with the other cestuis, and that, since appellees were not heirs of Mrs. Brown, the interest to which they were entitled in this suit was a one-third interest in three-fourths of the land. This contention is premised on the conclusion that the first sentence of this item passed the equitable title to all of the cestuis in equal proportions, and the legal title to the trustee. We do not think this is a proper construction of this item. The trust was created "for the use and benefit of herself and our little children." Under the laws of Tennessee as proved in this case, which govern in respect to descent and distribution, Mrs. Brown was not an heir of her husband with respect to the real estate owned by him. In the absence of this item in the will, all of the residue of the estate, in so far as it consisted of real estate, passed to the surviving children of Governor Brown and their descendants, with certain dower rights in his widow. This item does not in any sense undertake to change the course of this descent, except to arrest it during the life of Mrs. Brown to be used by her for the benefit of herself and her children. The whole purpose of item seventh was to create a life estate in Mrs. Brown and hold the corpus of the estate together under her management during her lifetime for the benefit of herself and children. No effort to create a fee-simple title to any portion of this estate in Mrs. Brown is suggested to us by the language of this item. Stratton v. McKinnie (Tenn. Ch. App.) 62 S. W. 636.

Had this trust been created for the benefit of the children only, without naming the trustee as a beneficiary, then it would be construed to be limited to the minority of the beneficiaries, though not so expressly limited by the terms of the will itself. Under such construction, when any of the beneficiaries became of age or, if a female, married, the trustee would have been obligated to turn over to such beneficiary his or her share of the property. The estate of the trustee, under such a bequest, would terminate altogether upon the attainment of his or her majority by the youngest beneficiary. McNeill v. St. Aubin (Tex. Civ. App.) 209 S. W. 781.

But that was clearly not the intention of the testator in the instant case. Nor was it his intention to bequeath an undivided interest in a certain portion to his wife in fee. If so, why make her trustee of her own property and expressly grant her the power to sell it? We believe that, construing item seventh in connection with the instrument as a whole, and giving some effect to the provision that the trust was created for the use and benefit of both the trustee and her children, it was the intention of the testator to create a life estate in the residue of his estate in favor of the trustee.

■ Error is assigned by appellant to the action of the court below in permitting appellees to prove the laws of Tennessee with respect to descent and distribution of an es-

tate. The objection to the evidence offered was that such laws had not been specially pleaded by appellees. The petition contained only the statutory allegations of a suit in trespass to try title. Ordinarily a party desiring to prove the law of a foreign state must plead such law specially, but in our opinion this rule does not apply when a petition contains only the customary allegations of a suit in trespass to try title. Under such a pleading a plaintiff may prove any fact (with the possible exception of limitation) tending to establish his title. Bridges v. Cundiff, 45 Tex. 440; Edwards v. Barwise, 69 Tex. 84, 6 S. W. 677; Wade v. Boyd, 24 Tex. Civ. App. 492, 60 S. W. 360; Blumenthal v. Nussbaum (Tex. Civ. App.) 195 S. W. 275. Townes' Texas Pleading (2d Ed.) pp. 610–613.

■ The further contention is made that, if item seventh devised anything to the children of the testator, it was a gift to them as a class, and only those surviving the testator took under the will, to the exclusion of Brown McMillin, whose mother predeceased the testator. In our opinion, conceiving that this item made a devise of the land in suit to the children, such devise would not be a gift to a class. One of the essential requisites of a gift to a class is that the gift must be to a body of persons "uncertain in number at the time of the gift." Page on Wills (2d Ed.) vol. 2, § 918, and the many authorities there cited.

The number of testator's children at the time of the execution of this will was certain. There were but four of them, and they had been named twice in the will. There was no occasion for naming them again, and so they were referred to as "our little children."

■ But, regarding it as a gift to a class, the old common-law rule regarding lapses has been expressly changed by statute in this state. Article 8295, R. S. 1925, provides as follows: "Where a testator shall devise or bequeath an estate or interest of any kind by will to a child or other descendant of such testator, should such devisee or legatee, during the lifetime of the testator, die leaving children or descendants who shall survive such testator, such devise or legacy shall not lapse by reason of such death; but the estate so devised or bequeathed shall vest in the children or descendants of such legatee or devisee in the same manner as if he had survived the testator and died intestate."

This statute not only prevents a lapse by reason of the death of a legatee, who is a descendant of the testator, but it goes further and specifically provides that such devised estate shall vest in the descendants of the devisee. Most of the states of the Union have similar statutes, and the almost uniform rule of construction of such statutes by the courts of the several states is that they are applicable to gifts to a class the same as to an individual. Many authorities so construing these statutes are cited in Page on Wills (2d Ed.) vol. 2, § 934, and 40 Cyc. 1929. Able discussions of the reasons for this construction are contained in the following cases: Rudolph v. Rudolph, 207 Ill. 266, 69 N. E. 834, 99 Am. St. Rep. 211; Strong v. Smith, 84 Mich. 567, 48 N. W. 183; Woolley v. Paxson, 46 Ohio St. 307, 24 N. E. 599.

■ Our decision above on the question of limitation based upon the ground that Mrs. Brown took possession of this property as executrix applies with equal force here if her possession was that of trustee. She never repudiated the trust, and it is well settled that limitation does not begin to run in favor of the trustee against a beneficiary until there has been a repudiation of the trust and that fact has been brought home to the beneficiary.

Our conclusions are that appellees are the owners of one-third of this land by virtue of the provisions of item fifth of the will, and that, if we are mistaken in the construction of said item, then it is clear that they are entitled to the same interest under the provisions of item seventh.

The judgment of the trial court will be affirmed.