MARTINA BEFFA, Appellant, v. DAVID A. PETEREIN and JOHN PETEREIN, JR.—No. 39448.—191 S. W. (2d) 633.

Division Two, December 3, 1945.

Motion for Rehearing or to transfer to Banc Overruled, January 8, 1946.

*J. Grant Frye* for appellant.

878

*M. C. Matthes* for David A. Peterein, respondent, and *Rush H. Limbaugh* for John Peterein, Jr., respondent.

880

WESTHUES, C.—Plaintiff filed this suit to partition 146.09 acres of land situated in Cape Girardeau county, Missouri. The defendants, David A. Peterein and John Peterein, Jr., were brothers of plaintiff and the three, plaintiff and defendants, were the only children and heirs of John Peterein, Sr., deceased, the mother having, died many years ago. David filed an answer disclaiming any interest in ▮▮ the land, having deeded whatever interest he had to his brother John. John filed an answer claiming the whole title on the theory that through a contract with his father he was entitled to the farm. He asked that the court vest the title in him and quiet the same. The trial court entered a decree as prayed for in John's cross-bill and plaintiff duly appealed.

Plaintiff contends that by the residuary clause of the will of her father the land in controversy was devised to the three children share and share alike; that the evidence did not authorize a court of equity to enter a decree that the land belonged to John. Plaintiff contends that the evidence was insufficient to establish any contract by which the father agreed to give John the land in question. To understand the situation as it was presented to the trial court, it will be necessary to relate a brief history of the family with reference to the property in question.

The testator immigrated to this country from Switzerland and settled in Jefferson county, Missouri. The names and other circumstances shown in evidence indicate that they were of Italian descent. The testator married, reared a family and farmed for a livelihood. In the course of years he acquired three farms, title to which he held in his own name. Two of these farms were located in Jefferson county, Missouri, and the other in Wayne county. After the father had advanced in years his eldest son, David, transacted much of his business. When the testator was seventy-nine years of age, which was in October, 1934, he executed a will, the principal portions of which read as follows:

"I, John Peterein, Sr., now residing in Wayne County, Missouri, aged 79 years, being of sound mind, do make and publish this my last will and testament, as follows:

"I have three children living, namely, David. A. Peterein, Sr., Martina Beffa, nee Peterein, and John Peterein, Jr., my other child a girl, having died in infancy, and my wife having died in 1907, and I therefore devise and bequeath to my said son, David A. Peterein, Sr., his heirs and assigns forever, my farm near Silica and at said village of Silica, which the said David A. Peterein, Sr., has been farming for the past several years; and to my daughter, Martina Beffa, her heirs and assigns forever, I devise and bequeath my farm

near Bailey Station, which said farm is now being farmed by my renter, Alvin Son, both of the above described farms being in Joachim Township, Jefferson County, Missouri; and I give and devise to my said son John Peterein, Jr., his heirs and assigns forever, my farm in Wayne County, Missouri, near Ferry Switch, Missouri, being the farm on which my said son now resides.

"All the rest, residue and remainder of my property, which I may own at the time of my death, whether real, personal or mixed, and wheresoever situated, I give, devise and bequeath to my three living children aforesaid, in equal parts, share and share alike, their heirs and assigns forever."

A few years after the execution of this will the United States Government made plans for the construction of a dam known as the Wappapello dam. The farm in Wayne county, which by the will was devised to John, Jr., was situated within the territory needed for the Wappapello project. The United States Government, through condemnation proceedings and deeds, acquired the lands needed for that enterprise. The testator signed an option wherein he agreed to deed the Wayne county farm to the government. The deed was later executed and the testator received $10,100.00 for the farm. While negotiations were pending for the sale of the Wayne county farm to the government the testator purchased a farm in Cape Girardeau county, Missouri, which is sought to be partitioned in this case. The money derived from the sale of the Wayne county farm was used to pay for the Cape Girareau county farm, the purchase price being $8,900.00. The Wayne county farm had originally been purchased in 1915 for $4,200.00. The sale of the Wayne county farm was consummated March 4, 1940. The testator died in August, 1942. All of the above facts were not disputed.

The law seems to be that a conveyance of land, after a devise thereof, operates as a revocation of the devise. That undoubtedly was the rule at common law. 68 C. J. 842, sec. 543 and 69 C. J. 1007, sec. 2207; Dunlap v. Hart, 204 S. W. 525, 274 Mo. 600, 3 A. L. R. 1493. Under the law, therefore, the land in question constituted a portion of the residuary estate and passed to the three children share and share alike, unless John, Jr., was entitled thereto by virtue of a contract with his father. The application of the rule at common law often seems harsh. This case is a typical example. Here were three children whose father owned three farms. He devised one to each of the children. Subsequently he deeded one of the farms, however, not entirely voluntarily, because had he not deeded it the United States Government would have taken it by condemnation. The cash received was used to purchase another farm.

Under the rule at common law the devisee of the farm sold must divide the new farm purchased with the funds of the farm sold with his brother and sister. With that background we approach the

evidence relied upon by defendant John, Jr., in support of his alleged contract with his father.

▮ Appellant in her brief says:

"Assuming that the evidence was sufficient prima facie to establish a cause of relief under the Cross Bill, still, the evidence adduced in that behalf is not sufficiently clear, cogent, and convincing 'as to establish beyond a reasonable doubt that there was the contract existing as alleged in the Cross Bill and that there was performance thereof."

Many cases were cited in support of that statement. The rule of law is well established that evidence must be clear, cogent and convincing to authorize a court to enforce a contract of this nature. However, courts of equity are courts of conscience and these courts are eager to do justice. Justice in this case is certainly on the side of John, Jr. The evidence disclosed the following with reference to the contract between the father and John, Jr. In 1915 the father owned the two farms in Jefferson county that were devised to David and to plaintiff. He desired to purchase another farm to be occupied by John, Jr., hence, the purchase of the Wayne county farm. As to the understanding had with John witnesses testified as follows: William Estes testified that he sold the Wayne county farm to the father. This witness was asked the following questions and gave the following replies:

"Q. Did you ever talk to John Peterein, Sr., about what he bought it for? A. I heard him say 'I don't need the farm myself but I am buying the place for my son John.' Q. Did you ever hear him say anything about that any other time? A. Yes, sir, I heard him say he aimed for John to have the place . . . the rest of them had a farm and he wanted him to have one. Q. On what occasion did he tell you this? A. Well, we would just get to talking."

David, brother of John, Jr., testified as follows:

"A. He told him to move down there and work it—'I have no use for the farm, it is your farm, it will be your place, clear it up and work it, put it in shape,' and he did.

"Q. What did John do? A. He cleared it up; we would go down there hunting and help him clear up a lot of it; got a stump puller and pulled stumps, and made a farm out of it.

\* \* \*

"Q. After John moved on the place tell the court what he did about improving it? A. He went to improving it. Every dime he made he spent on the place, built up the fences. I hauled him two or three truck loads of barbed wire and woven wire.

\* \* \*

"Q. What buildings did he put on the place, if any? A. Good buildings; concrete foundation for a barn, 32 x 56; cow barn, silo and such, and he built a home; I don't know what he done but he

done the biggest part of the labor. Then he built a granary, corn crib and hog house; big barn, eight or ten stalls and walk way and hay loft, and a long crib to unload his corn in.''

The father stayed with John on the Wayne county farm much of the time making that his home. Charles Maglio testified as follows:

"Q. Relate what he would say on those occasions? A. Well, Mr. Peterein would always refer to the place, about John clearing it and what all he done to it, and about making a home for himself. He said he made that proposition when he come down, if he would clear the place and improve it, fix the house that was there and fence it, and I believe John did quite a little concrete work—he said, 'If you improve it it's going to be your place.' Then in later years, when I was going down there every week, Mr. Peterein was telling me about the Government going to take over the place, and asked me if I would make it a point to drive him to look for a place. I told him yes; and Mr. Peterein and John and myself went to look for a place, and every place he would look at, he would say, 'Well, whatever John gets, it is his place—whatever he wants, it's his.' There was one place in particular Mr. Peterein liked and John didn't like it. He told him, 'Well, it's your farm, if you don't like it get something you do like, I can't tell you what to buy.' ''

A number of other witnesses testified with reference to statements made by the testator to the effect that the Wayne county farm belonged to John. No evidence to the contrary was introduced. The evidence of the last witness above quoted brings us down to the time the United States Government took steps to acquire title to the Wayne county farm. The evidence was, that during the time after the testator had signed an agreement to sell the farm and before the deed was made he and John, Jr., made a number of trips looking for a farm; that the land purchased in Cape Girardeau county, the subject of this litigation, was selected by John, Jr. The evidence disclosed that a deed of trust was placed on the Wayne county land and given to the owner of the Cape Girardeau county land as security for the purchase price. It was further shown by the evidence that when the government paid for the land a check was made to Mrs. Myrtle Webb, the seller, for $7,323.00, being the balance due on the Cape Girardeau land. The sum of $119.88 was retained by the government to pay taxes. The balance of the money was paid to the testator. He paid and discharged a deed of trust and note of about $1400.00 held by the Federal Land Bank against the Cape Girardeau land and retained the balance. A number of witnesses testified that the testator said he was buying the Cape Girardeau land for John. The seller, Mrs. Webb, testified on this point as follows:

"Q. Did you have a conversation with John Peterein, Sr., about the time you closed the transaction and got the money? A. Yes.

"Q. Tell the court where it was and what was said? A. In the court house at Greenville. When we got our business attended to grandpa turned to me and said, 'Well, Mrs. Webb, I'll tell you goodbye, I may never see you again.' I said, 'O, I guess we will meet again, I'll be going back to the farm once in awhile, you are going to live there, aren't you?' He said, 'No, I'm not going to live there; I bought that for John and Mayme, and they are going to live there.'

"Q. Who is Mayme? A. John's wife."

Appellant offered no evidence contradicting the above testimony. Evidence was offered with reference to a number of transactions that had no direct bearing on the question in controversy. We will not summarize this. The vital question is, did John, Jr., go to the Wayne county farm with the understanding that if he lived there and improved the place it would be his land? That question must be answered in the affirmative. The next question is, did John, Jr., perform his contract? The answer to that question must also be in the affirmative. That being the case he was entitled to have that farm as a matter of right and his right was one that could be enforced in an equitable action. The second transaction, buying the Cape Girardeau farm with the funds derived from the sale of the Wayne county farm, was done with a mutual understanding between the contracting parties, the father and the son, to substitute the newly purchased land for the old. Appellant in his brief says:

"The evidence utterly fails to go to that length which a court of conscience and equity demands before divesting titles and before defeating the bounden will of John Peterein, Sr."

Suppose we could ask John Peterein, Sr., to solve that question, is there any doubt as to what his answer would be? We think not. We are also of the opinion that a court of equity could have entered no other decree than was entered in this case. Appellant in her brief attacked the evidence of David by saying it was given for ulterior purposes; that she had filed exceptions to his final settlement and that her brother John would testify for David in that case because David testified for him in this case. If David's evidence were omitted entirely it would not defeat John, Jr's., claim, as it still would be supported by an abundance of evidence. The law applicable to this case is as contended for by appellant. In fact it is not in dispute. The vital question in dispute is whether the evidence was sufficient to authorize the decree entered. Appellant thinks it is insufficient. As we view the situation we think it ample to sustain the finding of the trial court. Not only that, but we have reached the same conclusion.

The judgment is therefore affirmed. *Bohling* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.